**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2010

(Argued: June 20, 2011      Decided: November 10, 2011)

Docket No. 11-314-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

NIKE, INC.,

         Plaintiff-Counter-Defendant-Appellee,

v.

ALREADY, LLC d/b/a YUMS,

         Defendant-Counter-Claimant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LEVAL, LIVINGSTON and LOHIER, Circuit Judges.

        Plaintiff filed suit alleging that two shoe lines manufactured by defendant infringed plaintiff's trademark.  Defendant counterclaimed under the Declaratory Judgment Act and 15 U.S.C. § 1119.  After plaintiff delivered a covenant not to sue, the district court (Richard J. Sullivan, J.) held that the covenant ended the case or controversy between the parties and dismissed defendant's counterclaims for lack of subject matter jurisdiction.  We affirm.

ERIK S. MAURER, Banner & Witcoff, Chicago, IL (Christopher J. Renk, Audra C. Eidem Heinze, on the brief), for Plaintiff-Counter-Defendant-Appellee.

Keith E. Sharkin, Dickstein Shapiro LLP, New York, NY, on the brief, for Plaintiff-Counter-Defendant-Appellee.

JAMES W. DABNEY, Fried, Frank, Harris, Shriver & Jacobson LLP, New York, NY (Victoria J.B. Doyle, Randy C. Eisensmith, Elizabeth P. Kozlowski, on the brief), for Defendant-Counter-Claimaint-Appellant.

LOHIER, Circuit Judge:

This appeal requires us to decide whether a trademark registrant's delivery of a covenant not to sue, and voluntary dismissal of its trademark claims, divests a federal court of subject matter jurisdiction over a defendant's counterclaims for a declaratory judgment and cancellation of the trademark's registration. After considering the breadth of the plaintiff's covenant not to sue and the improbability of future infringement, the United States District Court for the Southern District of New York (Richard J. Sullivan, J.) dismissed the defendant's counterclaims because no case or controversy existed under Article III of the United States Constitution. We affirm.

**BACKGROUND**

1.      The Complaint and Counterclaims

In July 2009, plaintiff Nike, Inc. filed a complaint against defendant Already, LLC d/b/a Yums ("Yums"), alleging trademark infringement, false designation of origin, unfair

competition, and trademark dilution in violation of 15 U.S.C. §§ 1114(1), 1125(a), and 1125(c), and related claims under New York common law and New York General Business Law § 360. According to the complaint, in 1982, Nike designed a shoe called the Air Force 1, which it has since produced in more than 1,700 color combinations, selling millions of pairs each year. The complaint alleged that the Air Force 1 shoe has a distinctive appearance for which Nike owns several federal trademark registrations, including U.S. Trademark Registration Number 3,451,905, registered with the United States Patent and Trademark Office on June 24, 2008 (hereinafter the "'905 Registration"), for "the design of the stitching on the exterior of the shoe, the design of the material panels that form the exterior body of the shoe, the design of the wavy panel on the top of the shoe that encompasses the eyelets for the shoe laces, the design of the vertical ridge pattern on the sides of the sole of the shoe, and the relative position of these elements to each other." Compl. ¶ 11 (quoting the '905 Registration). It further alleged that Yums was selling "footwear bearing a confusingly similar imitation" of the Air Force 1 shoe, including shoes known as Sugar and Soulja Boy. Id. at ¶¶ 14-15.

In November 2009, Yums filed counterclaims for a declaratory judgment that the '905 Registration was not in fact a "trademark" under 15 U.S.C. § 1127 or New York law, and for cancellation of the '905 Registration pursuant to the cancellation provisions of the Lanham Act, 15 U.S.C. § 1119. Yums also alleged that an "actual controversy" existed regarding whether Yums had infringed any rights Nike had in the purported trademark.

    2.    The Covenant Not To Sue

In March 2010, Nike delivered a "Covenant Not to Sue" (the "Covenant") to Yums. The Covenant's preamble stated as follows:

> NIKE has recently learned that [Yums]'s actions complained of in the Complaint no longer infringe or dilute the NIKE Mark at a level sufficient to warrant the substantial time and expense of continued litigation and NIKE wishes to conserve resources relating to its enforcement of the NIKE Mark.

The Covenant obligated Nike as follows:

> to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against [Yums] or any of its [successors or related entities and their customers], on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United Sates [sic] relating to the NIKE Mark based on the appearance of any of [Yums]'s current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

3. The District Court Proceedings and Decision

In April 2010, a month after Nike delivered the Covenant, the District Court held a hearing to determine whether the Covenant divested it of subject matter jurisdiction over Yums's counterclaims. Although Nike conceded during the hearing that it would be bound by the Covenant even if Yums became a competitive threat, Yums argued that a case or controversy persisted because Nike's litigation -- and the '905 Registration itself -- constituted a "continuing libel" against Yums by making it appear that Yums had infringed and continued to infringe Nike's trademark. In the course of its argument, Yums acknowledged that it had not previously sought to cancel the '905 Registration, which had been filed nearly two years earlier.

4

After the hearing, Nike moved pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure to dismiss Yums's counterclaims without prejudice on the ground that the District Court lacked subject matter jurisdiction. Nike also moved to dismiss its own claims voluntarily and with prejudice, pursuant to Rule 41(a)(2).

In response, Yums argued that Nike's claims should be dismissed with prejudice by summary judgment under Rule 56(b) rather than Rule 41(a)(2) to allow the action, insofar as it included Yums's counterclaims, to proceed. Yums argued that its counterclaims were not subject to dismissal along with Nike's claims because, under the Declaratory Judgment Act, they created an independent controversy over whether Nike had violated Yums's rights by improperly obtaining a trademark registration.

To demonstrate the existence of an actual controversy notwithstanding the Covenant's broad language, Yums filed affidavits from prospective investors who suggested that Nike's lawsuit had deterred them from investing in Yums or had prompted them to withdraw prior investments. A former investor in Yums, for example, stated that he resold his stock to Yums at a loss after learning of Nike's lawsuit, which he feared would tarnish Yums's reputation and deter other investors from investing in the company. The investor explained that the Covenant provided inadequate assurance that Nike could not "assert its trademarks against" Yums in the future over the sales of shoes similar to Air Force 1.

On January 20, 2011, the District Court dismissed Nike's claims with prejudice and Yums's counterclaims without prejudice. See Nike, Inc. v. Already, LLC, d/b/a Yums, No. 09 Civ. 6366 (RJS), 2011 WL 310321, at *1, *8 (S.D.N.Y. Jan. 20, 2011). In dismissing Nike's

5

claims "on consent," the District Court explained that Yums had "consent[ed] to" dismissal of these claims but did not specify which rule, if any, it was invoking. Id. at *2.

Turning to Yums's counterclaims and relying on MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007), the District Court first concluded that Yums's declaratory judgment action failed to create a justiciable "case or controversy," since a declaratory judgment claimant "must, 'under all the circumstances,' demonstrate 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" Nike, Inc., 2011 WL 310321, at *4 (quoting MedImmune, 549 U.S. at 127). The District Court held that Yums's counterclaims did not meet this standard in light of the Covenant. In reaching this conclusion, the District Court considered the Covenant's language and broad scope, id., Yums's failure to show that it had taken meaningful steps to create new shoes not covered by the Covenant, id. (quoting Diamonds.net LLC v. Idex Online, Ltd., 590 F. Supp. 2d 593, 600 (S.D.N.Y. 2008)), and the absence of prior litigation between Nike and Yums. Id. at *5 (citing ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 670-71 (S.D.N.Y. 2010) (Chin, J.)). The District Court then ruled that Yums's counterclaim for cancellation of the '905 Registration under 15 U.S.C. § 1119 failed to confer subject matter jurisdiction because such a claim can arise only as part of a separate, independently supportable action. Id. at *6-7. Lastly, without holding an evidentiary hearing, the District Court rejected Yums's application for attorneys' fees under the Lanham Act, 15 U.S.C. § 1117(a), because the case was not "exceptional" as required by the Act. Id. at *8.

Yums timely appealed, challenging both the District Court's dismissal of its claims and

the court's denial of Yums's motion for attorneys' fees without an evidentiary hearing.

## DISCUSSION

We determine the existence of subject matter jurisdiction before addressing other threshold issues. Where a district court dismisses an action "for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo." Maloney v. Soc. Sec. Admin., 517 F.3d 70, 74 (2d Cir. 2008). A "case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

    1.    Rule 41(a)(2)

Because the District Court's conclusion that it lacked jurisdiction followed its dismissal of Nike's claims under Rule 41(a)(2), Yums urges us to review in the first instance whether the District Court complied with that rule, which provides, in relevant part:

> Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication.

Fed. R. Civ. P. 41(a)(2). Yums claims that it did not consent to dismissal of its counterclaims, and that the District Court's dismissal of the entire action in fact occurred "over the defendant's objection" in violation of the second sentence of the rule.

When a plaintiff seeks to withdraw its claims pursuant to Rule 41(a)(2), but another event

independently deprives the district court of an Article III case or controversy involving the defendant's counterclaims, Rule 41(a)(2) is irrelevant. See Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054, 1057 n.2 (Fed. Cir. 1995) (finding it unnecessary to consider whether dismissal pursuant to Rule 41(a)(2) was proper where dismissal was clearly proper because of the absence of an Article III case or controversy), abrogated on other grounds by MedImmune, 549 U.S. 118; see also Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc., 248 F.3d 1333, 1340 & n.6 (Fed. Cir. 2001) (affirming a dismissal of a counterclaim based on a lack of Article III case or controversy even though the district court had not indicated any reliance on Rule 41(a)(2) or a statement of non-liability, and the record failed to show whether the defendant consented to Rule 41(a)(2) relief). Accordingly, we need not further address Rule 41(a)(2) because we conclude, as a matter of law, that Nike's delivery of the Covenant to Yums divested the District Court of subject matter jurisdiction, and we affirm on that basis.

2. The Covenant Not To Sue

In order to qualify as a justiciable "case or controversy" under Article III, "[t]he controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). The "case or controversy" requirement is not satisfied by a "difference or dispute of a hypothetical or abstract character." Id. at 240. In trademark cases seeking relief under either the Declaratory Judgment Act, 28 U.S.C. § 2201(a), or Section 37 of the Lanham Act, 15 U.S.C. § 1119, a valid covenant

8

not to sue may strip district courts of jurisdiction. We review the jurisdictional effect of such a covenant under both Acts in turn.

a. Declaratory Judgment Act

We turn first to the effect of such a covenant in trademark cases involving the Declaratory Judgment Act, which provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201(a). The Declaratory Judgment Act does not expand the subject matter jurisdiction of the federal courts. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1110 (2d Cir. 1997). In Aetna, the Supreme Court "explained that the phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." MedImmune, 549 U.S. at 127 (citing Aetna, 300 U.S. at 240). Its pronouncement in Aetna was refined four years later in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941), in which the Supreme Court endorsed a totality of the circumstances test for determining whether a party seeking relief under the Act has demonstrated that a justiciable "controversy" exists. The Court in Maryland Casualty explained that "[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. In adopting this test, the Supreme Court recognized that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it

9

would be possible, to fashion a precise test for determining in every case whether there is such a controversy." Id.

We did not apply the Maryland Casualty test in a trademark case until Starter Corp. v. Converse, Inc., 84 F.3d 592, 595 (2d Cir. 1996) (per curiam). In that case, we employed a two-pronged test for determining whether subject matter jurisdiction exists:

> [i]n a declaratory judgment action involving trademarks, the test for an "actual case or controversy" has two prongs, both of which must be satisfied in order to establish declaratory judgment jurisdiction: (1) has the defendant's conduct created a real and reasonable apprehension of liability on the part of the plaintiff, and (2) has the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant.

Id. at 595.

After our decision in Starter, the Supreme Court decided MedImmune, which confirmed that Maryland Casualty's totality of the circumstances test for declaratory judgment actions applied in intellectual property cases, see 549 U.S. at 126-27, but which rejected Starter's reasonable apprehension requirement, id. at 122, 132 (quoting Gen-Probe Inc. v. Vysis, Inc., 359 F.3d 1376, 1381 (Fed. Cir. 2004)). MedImmune requires that we consider only whether the adversity of legal interests that exists between the parties is "'real and substantial'" and "'admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" Id. at 127 (quoting Aetna Life Ins., Co., 300 U.S. at 241).[1] The Court also suggested that the threat of future

---

[1] See also Bruce Winston Gem Corp. v. Harry Winston, Inc., No. 09 Civ. 7352 (JGK), 2010 WL 3629592, at *4 (S.D.N.Y. Sept. 16, 2010) ("the first prong of the Starter test cannot survive because the Supreme Court [in MedImmune] has made it clear that there need not be an imminent threat of liability," but "the second prong . . . should survive because it is anchored in the requirement of the specificity and immediacy of the dispute which the Court reaffirmed in

10

litigation remains relevant in determining whether an actual controversy exists. As in MedImmune, for example, simply holding litigation in abeyance, where a party could forestall litigation indefinitely by paying licensing fees, does not eliminate the case or controversy. Id. at 128 ("[The declaratory judgment plaintiff]'s own acts . . . eliminate the imminent threat of harm [and] [t]he question before us is whether this causes the dispute no longer to be a case or controversy within the meaning of Article III.").

Until now, we have not applied MedImmune in an intellectual property case. However, a few of our sister circuits have done so in the context of declaratory judgment actions involving patents, which we have described as sufficiently "analogous" to those involving trademarks that "principles applicable to declaratory judgment actions involving patents are generally applicable with respect to trademarks." Starter Corp., 84 F.3d at 596; see also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1298-99 (Fed. Cir. 2009) (applying MedImmune to declaratory judgment action involving patents).[2]

In determining whether a covenant not to sue eliminates a justiciable case or controversy in a declaratory judgment action involving a trademark, district courts applying the MedImmune totality of the circumstances test should especially consider, in addition to other factors: (1) the language of the covenant, (2) whether the covenant covers future, as well as past, activity and

MedImmune.").

[2] Some district courts in our Circuit have already extended the holding in Revolution Eyewear to trademark cases, holding that a covenant not to sue can deprive a federal court of jurisdiction in such cases where there is no evidence of "sufficient intent and apparent ability" to engage in infringing activity. See Bruce Winston Gem Corp., 2010 WL 3629592, at *4; ICOS Vision Sys. Corp., N.V. v. Scanner Techs. Corp., 699 F. Supp. 2d 664, 669 (S.D.N.Y. 2010) (Chin, J.) (quoting Diamonds.net LLC, 590 F. Supp. 2d at 600).

products,[3] and (3) evidence of intention or lack of intention, on the part of the party asserting jurisdiction, to engage in new activity or to develop new potentially infringing products that arguably are not covered by the covenant.[4]

Applying these factors here, we agree with the District Court that it had no actual case or controversy before it. The language of the Covenant is broad, covering both present and future products: Nike "unconditionally" and permanently renounced its right to claim, demand or "commenc[e], caus[e] or permit[] to be prosecuted any action in law or in equity" with respect to any shoe currently made by Yums, including the Sugar and Soulja Boy shoes, and all colorable imitations thereof. Nike, Inc., 2011 WL 310321, at *1-2. The breadth of the Covenant renders the threat of litigation remote or nonexistent even if Yums continues to market and sell these shoes or significantly increases their production. Given the similarity of Yums's designs to the '905 mark and the breadth of the Covenant, it is hard to imagine a scenario that would potentially infringe the '905 mark and yet not fall under the Covenant. Yums has not asserted any intention to market any such shoe. Nike, Inc., 2011 WL 310321, at *4.

---

[3] In referring to both activities and products, we recognize that a covenant not to sue may be limited in the sense that it renounces claims with respect to future activity, but not future products.

[4] In its opinion, the District Court also considered the lack of a history of litigation between the parties. See Nike, Inc., 2011 WL 310321 at *5. Yums does not contend that any history of litigation between these parties would, standing alone, create a case or controversy if none exists based on the other factors discussed above. In any event, we conclude that the factors enumerated in our decision suffice to resolve this case. We do not consider whether a particularly contentious litigation history between two parties could preserve a case or controversy where a covenant not to sue would ordinarily eliminate it. Cf. Diamonds.net, 590 F. Supp. 2d at 598 ("While a threat of suit is not necessary to declaratory judgment jurisdiction, an aggressive litigation strategy . . . may signal the existence of an actual controversy." (internal citation omitted)).

In Revolution Eyewear, 556 F.3d at 1296, the Federal Circuit concluded that a controversy persisted when the plaintiff delivered a covenant that promised not to sue only as to prior sales of the allegedly infringing product. The crucial difference between Revolution Eyewear and this case is the scope of the two covenants. In Revolution Eyewear, it was undisputed that the covenant did not protect the defendant from suit for any future marketing. Id. Here, the Covenant is far broader. It covers both past sales and future sales of both existing products and colorable imitations. Given the breadth of the Covenant, no controversy exists.[5]

Yums nevertheless urges that a justiciable controversy persists because Nike's litigation continues to have an injurious effect. Pointing to the affidavits of various investors, Yums alleges harm from the potential loss of investments by investors who fear infringement lawsuits in the future and for that reason have refrained from further investing or have withdrawn their investments. In this case, potential investor concerns about infringement lawsuits against the company, despite Nike's broad Covenant, fail to establish the sort of genuinely adverse legal interests between Nike and Yums that MedImmune requires. In addition, Yums contends that the Covenant is a "continuing libel" against it because the Covenant asserts Yums's ongoing de

---

[5] To be sure, the Covenant has not made future litigation between the parties impossible: at oral argument on appeal, counsel for Nike acknowledged that if Yums were to manufacture an exact copy of the Air Force 1 shoe (which presumably would include not only Nike's claimed trade dress, but also its trademark), Nike could claim that the Covenant permits an infringement suit on the ground that a counterfeit differs from a colorable imitation under the Lanham Act. But given the absence of record evidence that Yums intends to make any arguably infringing shoe that is not unambiguously covered by the Covenant, this hypothetical possibility does not create a "definite and concrete" dispute. Aetna, 300 U.S. at 240. Because no justiciable actual controversy existed after the District Court dismissed Nike's claims, any ruling by the District Court based on either the potential investors' affidavits or Nike's reservations of its rights to sue over a future counterfeit shoe would have been advisory.

13

minimis infringement of Nike's trademark. Yums did not file a counterclaim alleging libel, however, and in any event we reject the contention that the mere existence of a document asserting infringement -- where the registrant cannot assert a claim relating to that infringement -- creates a case or controversy.

Relying on Cardinal Chemical Co. v. Morton International, Inc., 508 U.S. 83, 96, 99-103 (1993), Yums also argues that a finding of non-infringement does not deprive a court of jurisdiction to rule on the validity of a trademark or patent. Cardinal Chemical is inapposite, however, as it "concern[s] the jurisdiction of an intermediate appellate court, not a trial court." Giese v. Pierce Chem. Co., 43 F. Supp. 2d 98, 112 n.14 (D. Mass. 1999); see also Lamb-Weston, Inc. v. McCain Foods, Ltd., 78 F.3d 540, 546 (Fed. Cir. 1996) ("The Supreme Court's decision in Cardinal Chemical is limited to the specific facts of that case[;] [s]pecifically, [that] an affirmance by th[e] court [of appeals] of a finding of noninfringement is not, by itself, enough to vacate a declaratory judgment holding the patent invalid."). Moreover, unlike the trial court in Cardinal Chemical, the District Court here made no "finding[s]" on the merits of Yums's declaratory judgment action. See Cardinal Chemical, 508 U.S. at 86, 95 (emphasizing that the only issue before the Court was the circuit court's jurisdiction, and that "[i]n the trial court, of course, a party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy").

Yums also makes much of the District Court's exercise of subject matter jurisdiction over Nike's claims, which Yums contends was inconsistent with the District Court's determination that a case or controversy no longer existed. We have already acknowledged that the District

14

Court could have dismissed Nike's claims either for lack of subject matter jurisdiction or "on consent." See supra at 6-7. But Yums has not appealed the District Court's exercise of jurisdiction over Nike's claims, which resulted in a ruling favorable to Yums, and in the part of the District Court order that is before us there is no error.

b. The Lanham Act

We turn next to the Lanham Act, 15 U.S.C. § 1119, which Yums contends provides an independent basis of federal subject matter jurisdiction, notwithstanding the dismissal of the underlying trademark claim.[6] Under the Lanham Act, district courts are authorized to cancel registrations, but only "[i]n any action involving a registered mark." 15 U.S.C. § 1119. The limiting phrase "[i]n any action involving a registered mark" plainly narrows the circumstances in which cancellation may be sought -- namely, in connection with "a properly instituted and otherwise jurisdictionally supportable action involving a registered mark." Universal Sewing Mach. Co. v. Standard Sewing Equip. Corp., 185 F. Supp. 257, 260 (S.D.N.Y. 1960).

Section 1119 therefore creates a remedy for trademark infringement rather than an independent basis for federal jurisdiction. Both the Third Circuit and the Federal Circuit have

---

[6] Section 1119 reads in full:

> In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action. Decrees and orders shall be certified by the court to the Director, who shall make appropriate entry upon the records of the Patent and Trademark Office, and shall be controlled thereby.

15 U.S.C. § 1119.

held that, by its plain terms, this provision requires that "a controversy as to the validity of or interference with a registered mark . . . exist before a district court has jurisdiction to grant the cancellation remedy." Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992); see id. (noting that a petition to the Patent and Trademark Office is the "primary means of securing a cancellation," and that § 1119 provides no independent basis for jurisdiction) (citing Universal Sewing Mach. Co., 185 F. Supp. at 260); Windsurfing Int'l, Inc. v. AMF Inc., 828 F.2d 755, 758-59 (Fed. Cir. 1987); see also McCarthy on Trademarks and Unfair Competition § 30:110 (4th ed. 2010) ("[Section 1119] alone does not create grounds for federal jurisdiction."). We agree with their analysis, and hold that a claim for trademark cancellation under § 1119 is insufficient to support federal jurisdiction where a covenant not to sue has resolved the underlying infringement action.

Yums cites only one case, Bancroft & Masters, Inc. v. Augusta National Inc., 223 F.3d 1082 (9th Cir. 2000), in support of its argument that a court may retain jurisdiction over a § 1119 claim notwithstanding the end of a case or controversy with respect to the rest of the action. The Ninth Circuit in Bancroft & Masters, however, concluded that the promise not to sue in that case failed to end the case or controversy. Id. at 1085. Its pronouncement that even an unqualified promise "would not have mooted [the] separate request for [§ 1119] cancellation of [the] trademarks" is therefore dictum. Id. In addition, the Ninth Circuit in Bancroft failed to consider the language in § 1119 that renders that section remedial, not jurisdictional. Accordingly, we find its opinion unpersuasive.

Yums next characterizes Nike's original lawsuit as a "properly instituted and otherwise

16

jurisdictionally supportable action" and contends that this fact alone provided a basis for the District Court to retain jurisdiction over Yums's § 1119 cancellation counterclaim notwithstanding the Covenant. Yums's argument ignores the settled rule that the "case-or-controversy requirement . . . subsists through all stages of federal judicial proceedings." White River Amusement Pub, Inc. v. Town of Hartford, 481 F.3d 163, 167 (2d Cir. 2007) (internal quotation marks omitted) (citing Spencer v. Kemna, 523 U.S. 1, 7 (1998)). Although Nike's action was "properly instituted," it was no longer "jurisdictionally supportable" after the Covenant was delivered.

### 3. Attorneys' Fees

We review an order denying attorneys' fees under the Lanham Act for abuse of discretion. See Gordon & Breach Science Publishers S.A. v. Am. Inst. of Physics, 166 F.3d 438, 439 (2d Cir. 1999) (per curiam). Such fees are available only in "exceptional cases," which generally means that fees will be awarded to the defendant only if the plaintiff filed the action in bad faith. See Banff, Ltd. v. Colberts, Inc., 996 F.2d 33, 36 (2d Cir. 1993). Here, Nike filed its action pursuant to its own registered trademark and withdrew the action quickly. On the record before us, we cannot say that the District Court abused its discretion when it found that Nike had not acted in bad faith, and Yums fails to identify what additional information the District Court needed to make an informed decision about attorneys' fees. Accordingly, we find no abuse of discretion in its decision to deny fees without a hearing.

## CONCLUSION

We affirm the judgment of the District Court.