# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 1, 2023

Lyle W. Cayce
Clerk

———————

No. 22-10065

———————

Nursery Decals and More, Inc.,

*Plaintiff—Appellee*,

*versus*

Neat Print, Inc.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:19-CV-2606

_____

Before Haynes and Engelhardt, *Circuit Judges*, and deGravelles, *District Judge*.[*]

Per Curiam:[**]

Defendant-Appellant Neat Print, Inc., ("Neat Print") appeals the district court's cancellation of four of its trademarks by partial summary judgment. Specifically, Neat Print contends that its Updated Covenant Not

_____

[*] United States District Judge for the Middle District of Louisiana, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

to Sue Plaintiff-Appellee Nursery Decals and More, Inc. ("Nursery Decals") rendered the cancelation claims moot under *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013). For the following reasons, we agree and REVERSE as to those issues.

## I. Background

Neat Print and Nursery Decals sell novelty t-shirts. Both use online platforms like Amazon and Etsy.

This dispute centers on four trademarks which Neat Print registered with the United States Patent and Trademark Office ("USPTO") in 2014.[1] Nursery Decals alleged that, just before Father's Day in 2018, Etsy informed Nursery Decals that Neat Print had complained to Etsy about Nursery Decals' alleged trademark infringement. According to Nursery Decals, Etsy issued it a "final warning" to the effect that a future violation would result in the company being banned from Etsy. Nursery Decals claims it was forced to comply, resulting in a significant loss of sales. Nursery Decals also pulled the shirts from Amazon to avoid similar issues, resulting in further loss of sales. Nursery Decals asserted eleven (11) claims, including nine for declaratory and injunctive relief essentially alleging non-infringement and seeking to invalidate the four marks (Counts I–IV and VI–IX),[2] and three for damages—

---

[1] The trademarks are as follows: (1) the "BE NICE TO ME, MY WIFE IS PREGNANT" mark (Registration No. 4,746,598); (2) the "THE MAN BEHIND THE BUMP" mark (Registration No. 4,746,597); (3) the "YOU CAN'T SCARE ME" mark (Registration No. 5,256,615); and (4) the "WORLD'S OKAYEST" mark (Registration No. 5,076,010). All are for use on clothing.

[2] These claims of declaratory and injunctive relief include: (1) a declaratory judgment of non-infringement (Count I); (2) a declaratory judgment of lack of secondary meaning (Count II); (3) a declaratory judgment of genericness (Count III); (4) a declaratory judgment of invalid trademark registration (Count IV); (5) cancellation of U.S. Registration 4,746,598 (Count VI); (6) cancellation of U.S. Registration 4,746,597 (Count VII); (7)

No. 22-10065

one for fraud on the USPTO (Count V), one for tortious interference with existing business relationship under Texas law (Count X), and one for tortious interference with prospective business relationship under Texas law (Count XI).

On August 3, 2021, Nursery Decals moved for summary judgment on all claims. On the same day, Neat Print filed a cross-motion for partial summary judgment on the fraud and tortious interference claims.

On August 30, 2021, when Neat Print filed its opposition to Nursery Decals' motion, it also filed a Covenant Not to Sue. The Covenant was nearly identical to the one in *Already*,[3] and Neat Print claimed its Covenant

---

cancellation of U.S. Registration 5,076,010 (Count VIII); and (8) cancellation of U.S. Registration 5,256,615 (Count IX).

[3] Neat Print's Covenant Not to Sue provided in relevant part:

COVENANT

NEAT PRINT for and on behalf of itself, its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities, hereby unconditionally and irrevocably covenants to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against NURSERY DECALS or any of its parents, subsidiaries, divisions, related companies, affiliated companies, licensees, independent contract manufacturers, assigns, and/or other related business entities, as well as any of their predecessors, successors, directors, officers, employees, agents, distributors, attorneys, representatives, and employees of such entities and all customers of each of the foregoing (whether direct or indirect), on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United Sates relating to the MARKS based on the appearance of any of NURSERY DECALS' current and/or previous clothing product designs, and any colorable imitations thereof, regardless

No. 22-10065

rendered all declaratory and cancellation claims moot. Neat Print later filed a motion to dismiss for lack of subject matter jurisdiction, echoing the same arguments.

On October 22, 2021, the district court denied the motion to dismiss. The district court found the case "procedurally and substantively distinguishable" from *Already* because "Neat Print's Covenant Not to Sue has not definitely eliminated Nursery Decals' past and potential future injuries." Specifically, the Covenant had a potentially cognizable claim for tortious interference with prospective business relationships under Texas law which survived summary judgment, and "[t]he Covenant would not remove this past injury." Further, unlike *Already*, it was not "absolutely clear that this Covenant Not to Sue would prevent Neat Print from filing future take-down notices based on the disputed trademarks." Thus, the case was not moot.

---

> of whether that clothing is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

Similarly, the Covenant in *Already* obligated Nike:

> to refrain from making any claim(s) or demand(s), or from commencing, causing, or permitting to be prosecuted any action in law or equity, against [Already] or any of its [successors or related entities and their customers], on account of any possible cause of action based on or involving trademark infringement, unfair competition, or dilution, under state or federal law in the United Sates [sic] relating to the NIKE Mark based on the appearance of any of [Already]'s current and/or previous footwear product designs, and any colorable imitations thereof, regardless of whether that footwear is produced, distributed, offered for sale, advertised, sold, or otherwise used in commerce before or after the Effective Date of this Covenant.

*Nike, Inc. v. Already, LLC*, 663 F.3d 89, 92 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013).

No. 22-10065

The district judge also went on to grant Nursery Decals' motion for summary judgment on the various cancellation claims. The court then ordered the USPTO to cancel the four marks.

As to the damage claims, the lower court granted Neat Print's motion for summary judgment as to tortious interference with existing business relationship (Count X) and tortious interference with prospective business as to Amazon (Count XI). But the court found questions of fact on the claims for fraud on the USPTO (Count V) and tortious interference with prospective business relationship as to Etsy (Count XI).

On the same day, less than ten minutes before the district court's ruling was docketed, Neat Print submitted an Updated Covenant Not to Sue. The Updated Covenant added that "NEAT PRINT will not send any more 'takedown' or infringement notices relative to the MARKS to Amazon, Etsy, or any other marketplace (online or physical) for any products now or in the future sold by NURSERY DECALS."

On December 2, 2021, the day before the pretrial conference and jury selection, Neat Print filed a motion for reconsideration. Neat Print argued (1) that the Updated Covenant addressed the trial court's holding with respect to possible future injuries, and (2) Nursery Decals had no viable past injury because fraud on the USPTO cannot serve as the basis for a tortious interference claim under Texas law.

The district court heard argument at the December 3, 2021, pretrial conference. The court denied the motion with written reasons to follow after trial.

On December 6, 2021, the matter proceeded to trial on the claims for fraud on the USPTO and tortious interference with prospective business relationship as to Etsy. The jury ultimately found no liability on both claims.

5

No. 22-10065

On December 16, 2021, the district court issued written reasons on the motion for reconsideration. The court found that the Updated Covenant "definitely eliminate[d] Nursery Decals's . . . potential future injuries." But the court also found that, under *Already*, the existence of a legally cognizable injury—here, tortious interference—allowed Nursery Decals to maintain the action despite the Updated Covenant. Neat Print had argued that the tortious interference claim was not viable because (1) it required an underlying tortious act under state law and (2) a federal claim for fraud on the USPTO cannot not serve as the predicate offense. But the district court concluded that "the allegedly tortious act in this case is the sending of a takedown notice that the sender knows to have been procured by fraud, not the preceding act of fraud upon the USPTO"—that is, the tortious act was fraud under Texas state law. The district court reasoned that its earlier ruling "correctly determined that Neat Print's Updated Covenant . . . did not eliminate all Nursery Decals's legally cognizable injuries and that Nursery Decals's claims were not moot." As with its last ruling, the district court relied on *Already*'s statement that the "only legally cognizable injury" in that case was that Already had suffered from "'the fact that Nike took steps to enforce its trademark' by sending a cease and desist letter and then filing an infringement suit." Thus, the district court found subject matter jurisdiction and denied the motion for reconsideration.

Judgment was entered on December 20, 2021. Nursery Decals did not appeal the take nothing part of the judgment dismissing its damage claims, and, thus, this part of the district court's judgment is not affected by this ruling. However, Neat Print timely appealed, urging that we vacate the

portion of the judgment canceling its marks because the district court lacked subject matter jurisdiction on that issue as to mootness.[4]

## II. Legal Standard

"Questions of subject-matter jurisdiction are reviewed *de novo*." *Hous. Ref., L.P. v. United Steel, Paper & Forestry, Rubber, Mfg.*, 765 F.3d 396, 400 (5th Cir. 2014) (citing *Wagner v. United States*, 545 F.3d 298, 300 (5th Cir. 2008)). This Court also reviews a district court's granting of summary

---

[4] Nursery Decals did not submit an appellee brief. Instead, Nursery Decals' President submitted a letter stating (1) that it did not have the resources to retain counsel to pursue the appeal; (2) that it knew that, as a corporation, it could not proceed pro se, but (3) that it hoped this Court would decide the issue on the merits and affirm the lower court's decision, for the reasons given below and in Nursery Decals' earlier briefing. Putting aside the conflict between Nursery Decals' alleged lack of resources and its allegation in the complaint that it had $3.5 million in annual sales, Nursery Decals is correct that "[t]he rule is well established that a corporation can appear in a court of record only by an attorney at law." *Southwest Exp. Co. v. I. C. C.*, 670 F.2d 53, 55 (5th Cir. 1982) (citations omitted). Because Nursery Decals cannot appear through its President, *see id.*, the Court must thus disregard this letter.

However, Nursery Decals' sole penalty for the failure to file a brief is the loss of oral argument. *See* Fed. R. App. P. 31(c). *See also Texas Democratic Party v. Abbott*, 978 F.3d 168, 177 (5th Cir. 2020), *cert. denied,* 141 S. Ct. 1124 (2021) ("[E]ven an appellee's failure to file a brief does not cause an automatic reversal of the judgment being appealed. By appellate rule, so extreme a lapse does cause the appellee to lose the right to appear at oral argument."); *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 464 (5th Cir. 2018) ("We note that DBG has elected not to file a brief in this matter, but that does not preclude our consideration of the merits."); *Schmidt v. Gray*, 399 F. App'x 925, 926 n.2 (5th Cir. 2010) (explaining that appellee "failed to file a response brief, but neither the Federal Rules of Appellate Procedure nor our circuit rules suggest that an appellee's failure to file a brief should have any effect on the appeal beyond the sanction provided in Federal Rule of Appellate Procedure 31(c)" and collecting decisions from other circuits holding the same); 16AA Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3977.2 (5th ed. 2023) ("Because no rule compels an appellee to file a brief, and because Rule 31(c) already provides a specific consequence for an appellee's failure to file a brief (exclusion from participation in oral argument), a court should not impose additional consequences on an appellee who does not file a brief, unless the court had specifically ordered the appellee to file a brief and the appellee had disobeyed that order.").

judgment under the same standard. *Id.* (citing *Resolution Performance Prods., LLC v. Paper Allied Indus. Chem. & Energy Workers Int'l Union, Local 4–1201*, 480 F.3d 760, 764 (5th Cir. 2007)).

"Subject-matter jurisdiction cannot be forfeited or waived and should be considered [by the Court] when fairly in doubt." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 671 (2009)). "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Punch v. Bridenstine*, 945 F.3d 322, 330 (5th Cir. 2019) (quoting *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012)).

### III. Discussion

At the outset, we emphasize that Nursery Decals has not appealed that part of the judgment in which it took nothing on its damage claims (Counts V, X, and XI). The sole issue before the Court is whether the Updated Covenant Not to Sue rendered moot Nursery Decals' claims seeking to declare the four trademarks invalid (Counts I–IV) and to cancel them (Counts VI–IX).

"Article III of the Constitution grants the Judicial Branch authority to adjudicate 'Cases' and 'Controversies.'" *Already*, 568 U.S. at 90. "In our system of government, courts have 'no business' deciding legal disputes or expounding on law in the absence of such a case or controversy." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)). Consequently, "those who invoke the power of a federal court [must] demonstrate standing—a 'personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Id.* at 90–91 (cleaned up).

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (per curiam) (some internal quotation marks omitted)). "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" *Id.* (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (1984)).

"[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued," as that would run the risk of a defendant stopping any unlawful conduct once sued just to obtain a finding of mootness, then resuming the unlawful conduct again once the case was dismissed, thus "repeating this cycle until he achieves all his unlawful ends." *Id.* (internal citation omitted). "Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

If such a defendant "demonstrat[es] that [its] [C]ovenant [Not to Sue] encompasses all of its allegedly unlawful conduct, it [becomes] incumbent on" the plaintiff asserting standing and denying mootness "to indicate that [the plaintiff] engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. "The case is moot if the court, considering the covenant's language and the plaintiff's anticipated future activities, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to recur." *Id.* at 94–95.

No. 22-10065

For example, in *Already*, Nike filed claims for trademark infringement and dilution, and Already counterclaimed that the trademark was invalid. *Id.* at 88. Eight months after filing its complaint and four months after the counterclaim, Nike issued a Covenant Not to Sue and claimed this mooted the action. *Id.* at 88–89.

"The question" before the Supreme Court was "whether a covenant not to enforce a trademark against a competitor's existing products and any future 'colorable imitations' moots the competitor's action to have the trademark declared invalid." *Id.* at 88. The Supreme Court agreed with the two lower courts that the Covenant mooted the case. *Id.* at 92–93.

> The breadth of this covenant suffices to meet the burden imposed by the voluntary cessation test. The covenant is unconditional and irrevocable. Beyond simply prohibiting Nike from filing suit, it prohibits Nike from making any claim *or* any demand. It reaches beyond Already to protect Already's distributors and customers. And it covers not just current or previous designs, but any colorable imitations. . . . We agree with the Court of Appeals "that it is hard to imagine a scenario that would potentially infringe [Nike's trademark] and yet not fall under the Covenant."

*Id.* at 93–94 (bracketed alteration and emphasis in original) (quoting *Already*, 663 F.3d at 97). Further, Already did not "indicate that it engages in or has sufficiently concrete plans to engage in activities not covered by the covenant," *id.* at 94, as "Already did not assert any intent to design or market a shoe that would expose it to any prospect of infringement liability," *id.* at 95. Thus, the action was moot. *Id.*

Here, Neat Print contends that, though the district court correctly found that the Updated Covenant "satisfied the *Already* test as to future harm[,]" the district court erred in invalidating its trademarks based on past harm. Further, Neat Print maintains that the "invalidity claims (Counts I–IV

and VI–IX) had no bearing on the then-pending tortious interference claim (Count XI) for a past harm analysis" and that "[t]he trial court improperly conflated all of the trademark-related claims and failed to conduct a claim-by-claim analysis for subject matter jurisdiction." *Id.*

We agree. The district court found that case was not moot because "Neat Print's Updated Covenant . . . did not eliminate all Nursery Decals's legally cognizable injuries," namely, the tortious interference claim. But this was error for two reasons.

First, while *Already* spoke of cases being mooted, "the court must evaluate mootness on a claim-by-claim basis to determine whether each claim satisfies the constitutional requirements for Article III jurisdiction." *United States v. Vega*, 960 F.3d 669, 673 (5th Cir. 2020) (citing *In re Pac. Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2009)). *See also Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) ("A suit may become moot only as to a particular form of relief. Therefore, we separately analyze mootness as to the claims supporting money damages and for equitable relief.") (citing *Henschen v. City of Houston*, 959 F.2d 584, 587 (5th Cir. 1992) (finding claim for immediate injunctive relief moot but claim for damages live)); *JSLG, Inc. v. City of Waco*, 504 F. App'x 312, 315–19 (5th Cir. 2012) (per curiam) (analyzing mootness separately as to claims for injunctive and declaratory relief and for damages); 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3533.2 (3d ed. 2023) ("Individual issues may be mooted [through voluntary action by the defendant that accords [ ] the relief demanded by the plaintiff] if all other matters are resolved, or even though other matters remain to be resolved."). *Cf. also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 286 (5th Cir. 2012) ("[A] plaintiff seeking both injunctive relief and money damages can continue to pursue the case, even after the request for an equitable remedy is rendered moot." (quoting Erwin Chemerinsky,

Federal Jurisdiction § 2.5.2 (6th ed. 2012))).[5] Thus, even if the case as a whole was not mooted, the survival of the tortious interference claims does not necessarily imply that the invalidity claims are live.

Second, the language of *Already* demonstrates that a claim for past damages has no bearing on a Covenant Not to Sue and its effects on an invalidity claim. *See Already*, 568 U.S. at 94–95 ("The case is moot if the court, considering the covenant's language and the plaintiff's *anticipated future activities*, is satisfied that it is 'absolutely clear' that the allegedly unlawful activity cannot reasonably be expected to *recur*." (emphasis added)).

Consequently, this Court finds this case is squarely governed by *Already*. The district court properly found that the Updated Covenant was broad enough to preclude any claim of future injury. Indeed, Nursery Decals has not disputed this finding, nor can it; as shown above, Neat Print's original Covenant was virtually identical to Nike's, and Neat Print's Updated Covenant went even further than Nike's. Thus, Neat Print has met its "formidable burden of showing that it is absolutely clear the allegedly

---

[5] *See also Hodge v. Jones*, 31 F.3d 157, 166 (4th Cir. 1994) (finding claims for injunctive and declaratory relief moot and analyzing appeal as to "justiciable claims for damages and attorney fees"); 6 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 32:2.50 (5th ed. 2023) ("Case or Controversy Analysis May Be for Each Trademark, Not for the Whole Case." (citing *Lontex Corp. v. Nike, Inc.*, No. 18-5623, 2020 WL 5947852, at *3 (E.D. Pa. Oct. 7, 2020))). *Cf. also* 15 Moore's Federal Practice - Civil § 101.100 (2023) ("If a plaintiff interposes a request for several forms of relief, the fact that some of the claims have been rendered moot will not divest the court of jurisdiction to entertain any residual claim that may be viable and on which effective judicial relief may still be granted . . . . [T]he mere fact that an intervening event or a change in circumstances may have alleviated the need for a declaration or injunction will not automatically moot the plaintiff's residual request for compensatory or punitive damages").

wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (quoting *Laidlaw*, 528 U.S. at 190).

Given this showing, "it was incumbent on [Nursery Decals] to indicate that [Nursery Decals] engages in or has sufficiently concrete plans to engage in activities not covered by the covenant." *Id.* at 94. Nursery Decals failed to do so, and the lower court's finding that claims of future injury are barred reflects that.

As a result, under *Already*, the Updated Covenant rendered any claim for invalidity moot. No separate claim for past damages changes that, and the district court's finding to the contrary was error.

## IV. Conclusion

Accordingly, we again note that Counts V, X, and XI are not before us on appeal, and we find that Counts I–IV and VI–IX were mooted by Neat Print's Updated Covenant Not To Sue. In light of that document, we VACATE as MOOT the portion of the final judgment concluding that Neat Print's four contested trademarks are not protected by the Landham Act and the portion of the final judgment cancelling the Registrations of the four contested trademarks.