**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 13-4263
_____

ALLEGHENY DESIGN MANAGEMENT, INC.,

Appellant

v.

TRAVELERS INDEMNITY COMPANY OF AMERICA

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(District Court No.: 2-12-cv-00658)
District Judge:  Terrence F. McVerry

_____

Submitted under Third Circuit LAR 34.1(a)
on July 7, 2014

Before:  RENDELL, CHAGARES and JORDAN, Circuit Judges

(Opinion filed:  July 11, 2014)

**RENDELL**, Circuit Judge:

Plaintiff Allegheny Design Management, Inc. ("ADM") appeals the District Court's grant of summary judgment in favor of defendant Travelers Indemnity Company of America ("Travelers") in connection with an insurance dispute. For the reasons set forth below, we will reject plaintiff's arguments and affirm summary judgment in favor of Travelers.

## I. Factual Background

ADM was hired as a general contractor to construct a Finish Line retail store inside a mall in Las Vegas, Nevada. The terms of the agreement with Finish Line were memorialized in a General Contractor Agreement. Travelers issued a Commercial General Liability Insurance Policy to ADM in connection with its general contractor responsibilities.

ADM hired two subcontractors to work on the Finish Line project. Elite Glass and Mirrors, Inc. ("Elite") was hired to install all glass[1] required in the project, and Gold Star Cleaning Company ("Gold Star") was hired to do the final cleaning of the glass within the store.

Elite completed its work within two to three days of receiving the glass to be installed at the Finish Line store. Then, on October 23, 2011, Gold Star began cleaning

---

[1] The glass at issue in this case was specifically to form the wall between the public mall area and the retail store.

2

the newly installed glass and a Gold Star representative notified the ADM Superintendant that the glass was damaged. Gold Star was instructed by ADM to continue cleaning the glass. The parties thus agree that the damage to the glass took place before Gold Star finished cleaning, and that either Gold Star or Elite caused the damage. On October 26, 2011, the Finish Line store opened for business. On October 27, 2011, the Las Vegas mall's manager issued a "punch list" for the Finish Line store, indicating that the glass had many small fine scratches.

On October 31, 2011, ADM submitted a claim to Travelers seeking coverage for the damaged glass under its insurance policy. ADM's claim was denied. Although Finish Line's legal department has informally asserted that ADM is obligated to pay for the damages to the glass, Finish Line has not brought suit against ADM or made a formal claim.

ADM filed a three count complaint against Travelers setting forth the following claims: (1) breach of contract; (2) declaratory judgment; and (3) bad faith. After ADM's complaint was removed from state court to the federal District Court, Travelers moved for summary judgment, which the District Court granted. ADM appeals this ruling.

## II. The Insurance Contract

Under Pennsylvania law, a contract is interpreted according to its plain language, and where a plaintiff's claim is foreclosed by the plain language of the contract, summary judgment is appropriate. *See Meyer v. CUNA Mut. Ins. Soc'y* 648 F.3d 154, 163 (3d Cir. 2011) ("A policy must be read as a whole and its meaning construed according to its plain language"); *see also Wheeler v. Graco Trucking Corp.,* 985 F.2d 108, 114 (3d Cir.

3

1993) (reversing a District Court's denial of summary judgment to defendants where it was clear that the contract did not allow for recovery). The insurance agreement states that Travelers will provide coverage for "property damage" that is caused by an "occurrence" that takes place during the policy period. (App. 209.) An "occurrence" is defined as either an "accident" (which is undefined in the contract), or an act or omission that causes "subcontracted work property damage." (App. 225.) "Subcontracted work property damage," in turn, is defined as property damage that is unexpected and unintended and is a "products-completed operations hazard." (App. 225.) The strangely-named "hazard" simply means that the property which is damaged must have been, *inter alia*, put to its intended use. (App. 222-23.) In sum, the policy generally covers (1) accidents and (2) damage occurring after the property has been put to its intended use.

In moving for summary judgment, Travelers invoked two provisions of the insurance policy which exclude from coverage "property damage" to:

> (5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
> (6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

(App. 212.) Of note, Exclusion 6 "does not apply to 'property damage' included in the 'products-completed operations hazard.'" (App. 213.)

### III. Discussion

The District Court here concluded that there was no breach of contract because ADM had not identified a covered "occurrence." Specifically, the Court stated that there was no evidence in the record suggesting that the damage was the result of an accident,

4

rather than faulty workmanship. The Court also found that there was no covered "subcontracted work property damage" because there was no "products-completed operations hazard," since the glass had yet to be put to its intended use. (App. 10, 13.) The Court stated that at the time the glass was damaged, neither all of the work in the contract with Finish Line had been completed, nor had the glass yet been put to its intended use by Finish Line.

The Court also found that, even if the damage to the glass had been caused by an "occurrence" under the policy, Exclusions 5 and 6 both applied. Finally, the Court held that Travelers did not have a duty to defend or indemnify ADM in the absence of a suit by Finish Line, and that Travelers was entitled to summary judgment on the bad faith claim since there was no coverage under the insurance policy. ADM challenges each of these legal conclusions.

ADM argues that the damage to the glass occurred during cleaning, rather than installation and thus was necessarily the result of an accident, such that it is covered under the policy. We need not resolve this issue, however, because we agree with the District Court that Exclusion 6 applies. Exclusion 6 precludes coverage for property damage caused by the incorrect performance of work by ADM or its subcontractors. (App. 212) The parties agree that one of ADM's two subcontractors caused the property damage to the glass through improper performance of their work. By its plain terms, Exclusion 6 applies.

ADM's response to Traveler's invocation of Exclusion 6 is that the damage was "products-completed operations hazard" property damage, so Exclusion 6 does not apply.

5

However, as we noted above, a "products-completed operations hazard" is defined as damage to property that has been put to its intended use. (App. 222.) ADM argues that the glass was no longer physically possessed by ADM and had been put to its intended use by Finish Line. Once the glass was installed in the storefront, it urges, it was put to its intended use because Finish Line had begun stocking, inventorying and moving into the store.

The District Court found, and we agree, that the damage to the glass occurred before the glass was put to its intended use. The purpose of the glass was clearly to serve as a window through which potential customers could survey items for sale. Accordingly, ADM's work (the glass) was only put to its intended use by Finish Line when the store opened for business – two days after the damage was first noticed. (App. 334, 338-339, 359.) The glass was not put to its intended use before the store was open to the public. For this reason, the damage did not constitute a products-completed operations hazard. The damage to the glass, therefore, falls under Exclusion 6 as damage caused by subcontractors, and is excluded from coverage under the insurance policy.[2]

ADM also contends that Travelers breached its contract by failing to defend or indemnify ADM. The insurance agreement between ADM and Travelers states that, "[Travelers] will pay those sums that the insured becomes legally obligated to pay as

_____

[2] Even were we to agree that this property damage constituted such a "hazard," Exclusion 5 would apply and thus preclude the claim from coverage. Neither party disputes that the damage to the glass was caused by the operations of one of ADM's two subcontractors. This squarely falls under Exclusion 5, which bars from coverage property damage to the part of real property "on which. . . .subcontractors working. . . .on your behalf are performing operations, if the 'property damage' arises out of those operations." (App. 212)

6

damages because of 'bodily injury' or 'property damage' to which this insurance applies. [Travelers] will have the right and duty to defend the insured against any 'suit' seeking those damages." (App. 209.) A suit is defined under the agreement as "a civil proceeding in which damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged." (App. 223.)

ADM admits that a suit has not been filed against it by Finish Line. In the absence of a suit, under the plain language of the policy, Travelers does not have a duty to defend. Furthermore, as the District Court stated, "there is [] no record evidence that ADM has otherwise been held liable for the damaged glass in any amount to trigger indemnification." (App. 15.) Consequently, there has been no breach of contract and the District Court correctly ruled on this issue.

With respect to ADM's claim of bad faith, under Pennsylvania law it must establish by "clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. v. Northern Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003) (citation omitted). Here, Travelers had a reasonable basis for denying coverage to ADM based upon the "occurrence" definition and the Exclusions referred to above. The District Court, therefore, properly granted summary judgment to Travelers on ADM's bad faith claim.

### IV. Conclusion

For the foregoing reasons, we will affirm the District Court's ruling of summary judgment in favor of Travelers.

7