MARGO K. BRODIE, United States District Judge
Plaintiff United States Underwriters Insurance Company ("U.S. Underwriters") commenced the above-captioned action on November 7, 2016, against Defendants Image By J & K, LLC ("Image"), Sphinx Cleaning Systems, Inc. ("Sphinx"), and Margarita LeClerc, seeking a declaratory judgment that it has no duty to defend or indemnify Image in the state court action, Margarita LeClerc v. Image By J & K, LLC and Image Building Maintenance, Inc. , Index No. 703797/2014 (Sup. Ct.) (the "LeClerc Action " ), pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. (Compl., Docket Entry No. 1.) On September 22, 2017, U.S. Underwriters and Image cross-moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, each seeking a declaration as to their rights and duties under the insurance agreement at issue. Image also requests reimbursement for costs incurred in connection with this action. (Pl. Mot. for Summ. J. ("Pl. Mot."), Docket Entry No. 30; Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem."), Docket Entry No. 31; Image Mot. for Summ. J. ("Image Mot."), Docket Entry No. 25; Image Mem. in Supp. of Image Mot. ("Image Mem."), Docket Entry No. 26.) For the reasons discussed below, the Court grants Image's cross-motion and denies U.S. Underwriters' cross-motion for summary judgment.
I. Background
a. LeClerc Action
Plaintiff U.S. Underwriters is a North Dakota insurance company, with a principal place of business in Pennsylvania, conducting business in New York. (Compl. ¶ 7.)[1] Defendant Image is a limited liability corporation with its principal place of business in Virginia. (id. ; Image Answer ¶ 7, Docket Entry No. 8.)
On March 4, 2010, Image entered into a "Floor Cleaning/Janitorial Services Agreement" (the "Agreement") with Walgreens Eastern Co., Inc. ("Walgreens"). (Pl. Statement of Material Facts Pursuant to Local R. 56.1 ("Pl. 56.1") ¶ 2, Docket Entry No. 35.) On March 23, 2011, Image subcontracted the services in the Agreement to Sphinx, a corporation with its principal place of business in New York. (Compl. ¶ 9; Pl. 56.1 ¶ 3.) Under the subcontract, Sphinx, inter alia , cleaned and waxed the floors of the Walgreens Pharmacy in Corona, New York (the "Premises"), upon the issuance of work orders by Image. (Subcontract Agreement between Sphinx and Image ("Subcontract Agreement") 2, annexed to Robert W. Muilenburg Decl. in Supp. of Pl. Mot. ("Muilenburg Decl."), *328 Docket Entry No. 30-2 as Ex. D, Docket Entry No. 30-6.) The work orders detailed the "[s]ervices to be performed, the time frame of the [s]ervices to be performed, and the price to be paid to [Sphinx] for [its] [s]ervices." (Id. ) As part of its subcontract, Sphinx was also required to obtain general liability insurance naming Image as an additional insured. (Pl. 56.1 ¶ 7.) Sphinx thus obtained commercial liability insurance policy number CP 3554491 from U.S. Underwriters (the "Policy"). (Id. ¶ 14.)
On June 2, 2011, LeClerc, a Walgreens employee, fell and sustained bodily injuries at the Premises. (LeClerc Compl. ¶ 24, annexed to Image Mot. as Ex. A, Docket Entry No. 25-2.) LeClerc testified that on the day of the accident, the Premises opened at 7:30 AM, about forty-five minutes later than usual, because the cleaning crew had left later than usual. (LeClerc Dep. 44:2-23, 47:20-48:6, annexed to Image Mot. as Ex. R, Docket Entry No. 25-19.) Consequently, the floors allegedly had yet to dry and remained wet. (Id. at 48:15-16.) After the Premises were opened to the public, a customer fell down in aisle five. (Id. at 65:20-66:8.) About twenty to twenty-five minutes later, sometime between 8:00 and 9:00 AM, LeClerc also fell down in aisle five, suffering the complained of injuries. (Id. at 14:2-5; 67:12-15.) LeClerc alleges that Image or its agents were responsible for ensuring that the Premises were safe and their failure to properly dry the floors violated their duties of reasonable care and diligence, causing her injuries. (LeClerc Compl. ¶ 22-26.)
b. The Policy
The parties dispute whether Image qualifies as an additional insured under the Policy. Section II (A) of the Policy (the "Additional Insured Provision") provides the following definition of an additional insured:
Who is An Insured is amended to include as an additional insured the person(s) or organizations(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damages" or "personal and advertising injury" caused, in whole or in part, by:
1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional insure[s] at the location[s] designated above.
(Policy, annexed as Ex. K to Image Mot. Docket Entry No. 25-12.)
Section II (B) of the Policy (the "Exclusions Provision") also provides certain policy exclusions specific to additional insureds:
With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
This insurance does not apply to "bodily injury" or "property damage" occurring after:
1. All work, including materials, parts or equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
2. That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.
(Id. ) The parties agree the term "your" in these sections is a reference to Sphinx, the named insured of the Policy. (Pl. 56.1 ¶ 16.)
*329 II. Discussion
a. Standards of review
i. Summary judgment
Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; Wandering Dago, Inc. v. Destito , 879 F.3d 20, 30 (2d Cir. 2018) ; see also Cortes v. MTA NYC Transit , 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." Rogoz v. City of Hartford , 796 F.3d 236, 245 (2d Cir. 2015) (first quoting Kaytor v. Elec. Boat Corp. , 609 F.3d 537, 545 (2d Cir. 2010) ; and then citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 249-50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." Anderson , 477 U.S. at 252, 106 S.Ct. 2505. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. Id. The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co. , 221 F.3d 394, 398 (2d Cir. 2000).
ii. Declaratory judgment
The Declaratory Judgment Act provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For the purposes of the Declaratory Judgment Act, "actual controversy" means "whether the facts alleged, under all the circumstances, show that there is a substantial controversy between parties having adverse legal interests, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Golden v. Zwickler , 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969) (quoting Maryland Casualty Co. v. Pac. Coal & Oil Co. , 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ); see also Nike, Inc. v. Already, LLC , 663 F.3d 89, 95 (2d Cir. 2011). " '[A] mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction....' '[Rather,] [w]here the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.' " Mitskovski v. Buffalo & Fort Erie Pub. Bridge Auth. , 415 F. App'x 264, 267 (2d Cir. 2011) (quoting S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc. , 24 F.3d 427, 431 (2d Cir. 1994) ).
Federal courts have "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act. Wilton v. Seven Falls Co. , 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) ; Mariah Re Ltd. v. Am. Family Mut. Ins. Co. , 52 F.Supp.3d 601, 623 (S.D.N.Y. 2014) ; see also Dow Jones & Co., Inc. v. Harrods Ltd. , 346 F.3d 357, 359 (2d Cir. 2003) ("Courts have consistently interpreted [the Declaratory Judgment Act's] permissive language as a broad grant of discretion to district courts to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."). The Second Circuit instructs district courts to consider certain prudential factors in determining whether to exercise *330 their discretion to consider a declaratory judgment action:
(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; ... (2) whether a judgment would finalize the controversy and offer relief from uncertainty[;] ... (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (5) whether there is a better or more effective remedy.
New York v. Solvent Chem. Co., Inc. , 664 F.3d 22, 26 (2d Cir. 2011) (quoting Dow Jones & Co., Inc. , 346 F.3d at 359-60 ) (alterations in original).
b. Additional Insured Provision
Plaintiff disclaims coverage by arguing that Image is not an additional insured within the meaning of the Policy. Plaintiff contends that the terms "caused, in whole or in part" and "ongoing operations" in the Additional Insured Provision disqualifies Image from being an additional insured. The parties agree that Image must qualify as an additional insured in order to be covered by the Policy.
i. Caused in whole or in part
The Additional Insured Provision provides that an entity named in the "Schedule" of the Policy is an additional insured, "but only with respect to liability for 'bodily injury' ... 'caused, in whole or in part, by ... the acts or omissions of [Sphinx] ... or [t]he acts or omissions of those acting on [Sphinx's] behalf.' " (Policy.)
Relying on Burlington Insurance Co. v. New York City Transit Authority , 29 N.Y. 3d 313, 57 N.Y.S.3d 85, 79 N.E.3d 477 (2017), Plaintiff argues that the phrase "caused, in whole or in part" requires Sphinx's acts or omissions to have been the proximate cause of the bodily injuries at issue. (Pl. Mem. 7-8.) Plaintiff thus argues that Sphinx's acts or omissions cannot be the proximate cause of LeClerc's injuries because all the contractual services had been performed "well before" the incident. (Id. at 8.) Rather, Plaintiff contends that Walgreens' decision to allow employees onto the Premises despite the existing wet conditions is the proximate cause. (Id. at 8-9.)
Image argues that Sphinx's acts or omissions are the proximate cause of LeClerc's injuries because Sphinx had the sole contractual responsibility to ensure that the Premises were dry on the day of the incident. (Image Opp'n to Pl. Mot. ("Image Opp'n") 8-9, Docket Entry No. 27-2.) Image also contends that courts have "repeatedly analyzed" the same or similar language in the Additional Insured Provision and "found an extremely broad duty to provide [a]dditional [i]nsured coverage." (Id. at 9.) In addition, Image distinguishes Burlington on the grounds that the injured party in that case "was an employee of the [a]dditional [i]nsured ..., not a third-party stranger to the policy." (Id. at 11.)
Under New York law, an insurer's duty to defend policyholders is "exceedingly broad," and "broader than the ... duty to indemnify." Atl. Ave. Sixteen AD, Inc. v. Valley Forge Ins. Co. , 150 A.D.3d 1182, 56 N.Y.S.3d 207, 209 (2017) (citation and internal quotation marks omitted); see CGS Indus., Inc. v. Charter Oak Fire Ins. Co. , 720 F.3d 71, 83 (2d Cir. 2013) ("The narrower duty to indemnify arises only if the claim for which the insured has been judged liable lies within the policy's coverage." (quoting Allianz Ins. Co. v. Lerner , 416 F.3d 109, 115 (2d Cir. 2005) ) ). If there is even a "reasonable *331 possibility of coverage," the insurer "will be called upon to provide a defense...." Euchner-USA, Inc. v. Hartford Cas. Ins. Co. , 754 F.3d 136, 141 (2d Cir. 2014) (quoting Auto. Ins. Co. of Hartford v. Cook , 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152 (2006) ).
"An insurer's duty to defend ... is ordinarily ascertained by comparing the allegations of a complaint with the wording of the insurance contract." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co. , 363 F.3d 137, 144 (2d Cir. 2004) (citations omitted); see also Emp'rs. Ins. Co. of Wausau v. Northfield Ins. Co. , 150 F.Supp.3d 196, 200 (E.D.N.Y. 2015). "The duty to defend remains 'even though facts outside the four corners of the pleadings indicate that the claim may be meritless or not covered.' " Euchner-USA, Inc. , 754 F.3d at 140 (alterations omitted) (quoting Auto. Ins. Co. of Hartford , 7 N.Y.3d at 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152 ). While "[t]he New York Court of Appeals has eschewed wooden application of the four corners of the complaint rule," see QBE Ins. Corp. v. Adjo Contracting Corp. , 121 A.D.3d 1064, 997 N.Y.S.2d 425, 440-41 (2014) (citations and internal quotation marks omitted), the extrinsic evidence relied upon may not overlap with the facts at issue in the underlying case, see City of New York v. Liberty Mut. Ins. Co. , No. 15-CV-8220, 2017 WL 4386363, at *15 (S.D.N.Y. Sept. 28, 2017) (holding that "it is a 'settled rule [under New York law] that extrinsic evidence can[not] be used to defeat the duty to defend ... [unless it is] unrelated to the merits of [the underlying] plaintiff's action.' " (citation omitted) ). See Int'l Bus. Machs. Corp. , 363 F.3d at 148 (explaining that New York courts "allows an insurer to refuse or withdraw a defense if evidence extrinsic ... 'unrelated to the merits of plaintiff's action[,] plainly take the case outside the policy coverage' " (citation omitted) ); Striker Sheet Metal II Corp. v. Harleysville Ins. Co. of New York , No. 16-CV-05916, 2018 WL 654445, at *10 (E.D.N.Y. Jan. 31, 2018) ("Importantly, the issues and extrinsic evidence present are wholly irrelevant to the principal merits of the [u]nderlying [a]ction, as required by the Second Circuit to disclaim the duty [to defend]." (citation omitted) ); Ellen S. Pryor, The Tort Liability Regime and the Duty to Defend , 58 MD. L. REV. 1, 24 (1999) ("Most courts disallow the simultaneous adjudication of the duty to defend on the basis of extrinsic facts when those facts overlap with facts at issue in the tort suit."); see also MIC Gen. Ins. Co. v. Allen , 697 F. App'x 717, 720 (2d Cir. 2017) (considering undisputed extrinsic evidence that did not overlap with the merits inquiry of the underlying action in evaluating duty to defend).
1. Evaluating LeClerc's complaint
Plaintiff may not disclaim coverage based solely on LeClerc's complaint because it sufficiently alleges that Sphinx's actions or omissions proximately caused LeClerc's injuries. In her complaint, LeClerc alleges that Image or its agents had the "duty ... to use reasonable care and diligence" in providing their services, including "keeping the [Premises] in a reasonably safe condition." (LeClerc Compl. ¶ 23.) LeClerc alleges that Image and its agents violated their duties by failing to properly dry the floors, leaving the Premises "in a defective, dangerous and slippery condition." (Id. ¶ 24.) Image's or its agents' negligence allegedly "caused" LeClerc to sustain her bodily injuries. (Id. ¶ 26.) Accordingly, Plaintiff may not disclaim Image as an additional insured due to lack of proximate cause based on the allegations in LeClerc's complaint.
2. Extrinsic evidence
Plaintiff relies on extrinsic evidence beyond the four corners of LeClerc's *332 complaint that impermissibly overlaps with the merits of the LeClerc Action. To disclaim coverage, Plaintiff argues that LeClerc and Walgreens are the proximate cause of LeClerc's injuries. (See Pl. Mem. 8-9 ("There is no dispute that it was Walgreen[s]'[ ] responsibility to ensure the floors were dry prior to allowing any employees into the store. Nor is there any dispute that the Walgreens manager and LeClerc were aware of wet areas at the Premises, but that Walgreens permitted employees onto the Premises nevertheless.").) However, if LeClerc or Walgreens are solely at fault, Image, by way of Sphinx, cannot be held liable in the underlying action. See Gilbane Bldg. Co. v. Admiral Ins. Co. , 664 F.3d 589, 600 (5th Cir. 2011) (holding consideration of "whether [plaintiff in the underlying action] acted negligently ... goes directly to the merits of the underlying negligence suit, as well as to the duty to defend"). The Court therefore cannot consider the proffered "overlapping" evidence in evaluating the duty to defend. See Liberty , 2017 WL 4386363, at *15. To hold otherwise would obviate a core principle of the duty to defend - that the duty extends even as to meritless claims. See id. ("If an insurer could defeat its duty by proving, in a collateral action, the existence of a fact that is relevant to the merits of the underlying suit, it would follow that the insurer could subvert its obligation to defend against meritless suits."); Cont'l Cas. Co. v. JBS Const. Mgmt., Inc. , No. 09-CV-6697, 2010 WL 2834898, at *3 (S.D.N.Y. July 1, 2010) ("To permit the insurer to withdraw its defense whenever it becomes clear that the underlying lawsuit is meritless would wholly undermine the well-established function of the duty to defend to serve as 'litigation insurance.' "); see also Gilbane Bldg. Co. , 664 F.3d at 600 (holding considering evidence "that goes both to coverage and the merits of the case ... would conflate the duty to defend with the duty to indemnify" under Texas law); Liberty , 2017 WL 4386363, at *15 (same under New York law).
Contrary to Plaintiff's claim, the reasoning in Burlington does not require the consideration of the proffered extrinsic evidence. In Burlington , the New York Court of Appeals held that the defendants were not additional insureds where coverage was limited to bodily injuries "caused, in whole or in part" by the named insured. Burlington , 29 N.Y.3d at 322, 57 N.Y.S.3d 85, 79 N.E.3d 477. Central to the conclusion was the determination that "caused, in whole or in part" required the named insured to be the proximate cause of the injury. Id. Based on that determination, the Court of Appeals held that the defendants were not additional insureds because they, rather than the named insured, were the "sole proximate cause" of the injuries at issue. Id. at 325, 57 N.Y.S.3d 85, 79 N.E.3d 477. While the additional insured policies in Burlington and this action share the same qualifying language, the challenge before the New York Court of Appeals did not implicate the merits of the underlying action.[2] At most, the New York Court of Appeals determined the allocation of fault between the named insured and the potential additional insureds as to any liability arising from the underlying action. See id. at 327, 57 N.Y.S.3d 85, 79 N.E.3d 477 ("[I]f the parties desire a different allocation of risk, they are free to negotiate language that serves their interests."). By contrast, Plaintiff's challenge in this *333 action effectively requires a determination as to whether LeClerc has a claim. See Gilbane Bldg. , 664 F.3d at 600 ; see also Liberty , 2017 WL 4386363, at *15 ("When an insurer believes that undisputed facts relevant to the merits of the underlying action prove that the alleged injuries do not fall within the indemnification provisions, ... it must defend the action and seek to prove, in that action, the existence of the facts - at which point, it may withdraw its defense."). Plaintiff therefore cannot disavow coverage to Image based on the argument that LeClerc or Walgreens proximately caused LeClerc's injuries.
ii. Ongoing operations
The Additional Insured Provision states in pertinent part that "bodily injur[ies] ... caused, in whole or in part, by: 1. [y]our acts or omissions or 2. [t]he acts or omissions of those acting on your behalf; "in the performance of [Sphinx's] ongoing operations for the additional insured[s] at the location[s] designated above." (Policy (emphasis added).)
Plaintiff also disavows Image as an additional insured because LeClerc did not sustain her bodily injuries during Sphinx's "ongoing operations." (Pl. Mem. 1.) Plaintiff contends that the term "ongoing operations" limits additional insured coverage to "injur[ies] occur[ing] before the work has been completed." (Id. at 10.) Because "Sphinx had finished its work and left the Premises prior to LeClerc's injury," Plaintiff argues that Image does not qualify as an additional insured. (Id. )
Image contends that the term "ongoing operations" is defined broadly under New York law, and should be understood as encompassing "circumstances where [the named insured] is not present" on the Premises. (Image Reply 7.) Rather than only encompassing days of active work, Image argues that ongoing operations covers the entire period during which its contracts with Walgreens and Sphinx were in effect. (Id. at 4-7.) Because the contracts were in effect at the time of the incident, Image contends that LeClerc's injuries occurred during ongoing operations. (Id. at 8.)
Under New York law, "insurance policies are interpreted according to general rules of contract interpretation."[3]
*334 Intelligent Dig. Sys., LLC v. Beazley Ins. Co., Inc. , 716 F. App'x 1, 2 (2d Cir. 2017) (quoting Olin Corp. v. Am. Home Assurance Co. , 704 F.3d 89, 98 (2d Cir. 2012) ). Courts must therefore interpret insurance policies governed by New York law to "give effect to the intent of the parties as expressed in the clear language of the contract." Morgan Stanley Grp. Inc. v. New England Ins. Co. , 225 F.3d 270, 275 (2d Cir. 2000) (citation and internal quotation marks omitted). Words and phrases "should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp. , 424 F.3d 195, 206 (2d Cir. 2005) (alteration, citation and internal quotation marks omitted). "[C]lear and unambiguous" provisions of an insurance policy are thus "enforce[d] as written." Vill. of Sylvan Beach v. Trav. Indem. Co. , 55 F.3d 114, 115 (2d Cir. 1995) (citation omitted). Ambiguous policy language, "particularly the language of an exclusion provision," however, "must be interpreted in favor of the insured." Id.
As an initial matter, Plaintiff misinterprets the Additional Insured Provision. Although acknowledging that Image's additional insured status is "limited to bodily injury caused by Sphinx's acts or omissions in the performance of ... ongoing operations," (Pl. Mem. 9 (emphasis added) ), Plaintiff argues that this standard requires that the "injury occur[ ] before the work has been completed," (id. at 10). Plaintiff's interpretation ignores the presence of a colon following "bodily injur[ies]," separating the phrase from language concerning "acts or omissions," and "ongoing operations."[4] Rather than modifying "bodily injur[ies] which precedes the colon, "ongoing operations" appears best understood as modifying the clauses following the colon regarding Sphinx's "acts or omissions" or those undertaken "on [its] behalf." See Lockhart v. United States , 577 U.S. ----, ----, 136 S.Ct. 958, 962-63, 194 L.Ed.2d 48 (2016) ("[Q]ualifying words or phrases modify the words or phrases immediately preceding them and not words or phrases more remote, unless the extension is necessary from the context or the spirit of the entire writing") (quoting Black's Law Dictionary 1532-1533 (10th ed. 2014) ); Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venez. , 863 F.3d 96, 121 n.21 (2d Cir. 2017) ("Under [the last antecedent] rule, in a list of items that includes a limiting phrase at the end, the preferred reading applies the limitation only to the last item on the list and not to every item on the list."); GPIF-I Equity Co., Ltd. v. HDG Mansur Inv. Servs., Inc. , No. 13-CV-547, 2013 WL 3989041, at *8 (S.D.N.Y. Aug. 1, 2013) ("[T]he New York Court of Appeals has specifically relied on the principles underlying *335 the rule of the last antecedent in resolving an insurance contract dispute." (citation omitted) ). Parallel insurance provisions also at times expressly state that "act or omissions" have to occur "in the performance" of the named insured's ongoing operations. See Advantage Roofing & Constr. of Louisiana, Inc. v. Landmark Am. Ins. Co. , No. 16-CV-677, 2018 WL 1955516, at *4 (M.D. La. Mar. 13, 2018) ; Am. Guarantee & Liab. Ins. Co. v. Norfolk S. Ry. Co. , 278 F.Supp.3d 1025, 1039 (E.D. Tenn. 2017). Moreover, the Exclusions Provision directly addresses exclusions based on the timing of injuries, suggesting that the Additional Insured Provision is designed to focus on limitations based on Sphinx's acts or omissions. Accordingly, the Additional Insured Provision requires Sphinx's acts or omissions - not the bodily injures - to have occurred "in the performance of ... ongoing operations." See Emp'rs Mut. Cas. Co. v. Shivam Trading, Inc. , No. 16-CV-58, 2017 WL 2126911, at *3 (S.D. Ga. May 16, 2017) ("[The additional insured] ... is only covered for '[the named insured's] acts or omissions ... in the performance of [the named insured's] ongoing operations....' "), aff'd , 709 F. App'x 663 (11th Cir. 2018) ; USM, Inc. v. Barretta Enters., LLC , No. 15-CV-1537, 2016 WL 5339719, at *6 (D. Conn. Sept. 21, 2016) ("The terms of the endorsement in the policy issued to [the named insured] are clear and unambiguous: a person or organization is an additional insured under the policy only with respect to [the named insured's] acts or [the additional insured's] acts or omissions 'in the performance of [its] ongoing operations....' ").
Sphinx's acts or omissions at issue in the LeClerc Action occurred during ongoing operations. Although the parties dispute the meaning of "ongoing operations," they both agree that the term encompasses, at the very least, periods of active work. (See Pl. Mem. 10 (explaining that injuries sustained "while performing work" means that they occurred during ongoing operations).) LeClerc's complaint specifies that the responsible contractor failed to properly dry the Premises. An omission by definition occurs during periods of active work. Sphinx's omission or failure to dry the Premises therefore occurred during its ongoing operations.
For the foregoing reasons, Plaintiff cannot disclaim coverage to Image based on its status as an additional insured. Based on the allegations in LeClerc's complaint, Image qualifies as an additional insured because Sphinx's alleged failure to dry the Premises, an omission occurring during ongoing operations, proximately caused LeClerc's injuries.
c. Exclusions Provision
Regardless of Image's status as an additional insured, Plaintiff also argues that Image is excluded from coverage based on the Exclusions Provision. Plaintiff argues that the Exclusions Provision applies because LeClerc's bodily injuries occurred after Sphinx had completed all its work or the portion of Sphinx's "work out of which the injur[ies] arose had been put to its intended use." (Pl. Mem. 9.)
i. All Work Clause
Subsection 1 of the Exclusions Provision (the "All Work Clause") excludes from coverage "bodily injur[ies] ... occurring after ... [a]ll work ... on the project ... has been completed." (Policy.)
Plaintiff argues that the All Work Clause applies because "all work" had been completed prior to LeClerc's injury since Sphinx had left the Premises before LeClerc's entry onto the Premises. (Pl. Mem. 11.)
Image argues that the All Work Clause does not apply because the phrase "[a]ll *336 work" should be understood as encompassing the entire period during which Image's contracts with Walgreens and Sphinx were in effect. (Image Reply 6.) Because both contracts were in effect at the time of the incident, Image contends Sphinx cannot be said to have completed all its work when the injury occurred. (Id. ) Image thus argues that Plaintiff is placing undue emphasis on the completion of an individual work day, rather than the ongoing nature of the relationship. (Id. at 13.)
An insurer may only be relieved of its duty to defend on the basis of a policy exclusion if it demonstrates:
that the allegations of the complaint [in the underlying action] cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.
E. Ramapo Cent. Sch. Dist. v. N.Y. Sch. Ins. Reciprocal , 150 A.D.3d 683, 54 N.Y.S.3d 413, 418 (2017) (citations omitted); see also Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co. , 650 F. App'x 70, 71 (2d Cir. 2016) ("When an insurance contract contains an exclusion provision, the insurer generally bears the burden of proving that the claim falls within the scope of an exclusion by establishing that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation, and applies in the particular case." (quoting Vill. of Sylvan Beach , 55 F.3d at 115-16 ) (citations omitted) ).
Plaintiff may not disclaim its duty to defend Image based on the argument that the injury occurred after "[a]ll work" on the "project" had been "completed." The sections in the Policy regarding additional insured do not define the terms "[a]ll work," "project," and "completed." In addition, the parties have not provided any extrinsic evidence of the parties' intent, established customs, or state or federal law for guidance as to the meaning of these terms. See CGS Indus., Inc. v. Charter Oak Fire Ins. Co. , 720 F.3d 71, 77 (2d Cir. 2013) (providing step-by-step analysis courts must undertake in attempting to decipher the meaning of words in insurance contracts); see also Stein v. N. Assur. Co. of Am. , 617 F. App'x 28, 31 (2d Cir. 2015) ("An insurer may only disclaim its duty to defend on the basis of extrinsic evidence 'where the evidence offered ... allow[s] a court to eliminate the possibility that the insured's conduct falls within coverage of the policy.' " (citation omitted) ).
The term "completed," however, is defined in the Products-Completed Operations Hazard Provision of the Policy. Although the Products-Completed Operation Hazard Provision is not directly related to the Additional Insured and Exclusions Provisions, the Court finds the definitions of "completed" provided in that portion of the Policy instructive. See CWC Builders, Inc. v. United Specialty Ins. Co. , 134 F.Supp.3d 589, 605 n.20 (D. Mass. 2015) (looking to definition of "completed" in "Product-completed operations hazard" in assessing additional insured endorsement). One definition, in particular, states that work is deemed completed "[w]hen all of the work called for in [Sphinx's] contract has been completed." (P. 37 (emphasis added).) As this definition suggests, one reasonable interpretation of the term completed in the All Work Clause is that the policy exclusion does not apply so long as the injury occurs while Image's contract with Sphinx is in effect. While the All Work Clause does not use the term "contract," the duty to defend requires only a reasonable interpretation - not the most persuasive - for coverage to attach. See *337 Emp'rs Ins. Co. of Wausau v. Harleysville Preferred Ins. Co. , 726 F. App'x 56, 60 (2d Cir. 2018) ("New York courts construe policy exclusions strictly and narrowly, and resolve any ambiguity against the insurer." (citation omitted) ); Mack-Cali Realty Corp. v. Peerless Ins. Co. , 115 F.Supp.3d 449, 456 (S.D.N.Y. 2015) ("Under New York law, '[a]ny ambiguity as to the insurer's duty to defend is resolved in favor of the insured.' ") (quoting Int'l Bus. Machs. Corp. , 363 F.3d at 144 ).
Moreover, while "project" could be interpreted as connoting a subdivision of a contract, the term could also be reasonably interpreted as encompassing the entirety of any agreement for which the named insured sought coverage - in this case Sphinx's subcontract with Image. See CWC Builders , 134 F.Supp.3d at 605 ("[T]here is a triable issue whether the work required by the contract was completed by the date of the [property] damage....").
The Court therefore finds the All Works Clause inapplicable because one reasonable interpretation is that work was ongoing while the contracts were in effect.
ii. Intended Use Clause
Subsection 2 of the Exclusions Provision (the "Intended Use Clause") excludes coverage for bodily injuries if "[t]hat portion of ['Sphinx's] work' out of which the injury ... arises has been put to its intended use...." (Policy.)
Plaintiff argues that the Intended Use Clause is applicable because the work causing LeClerc's injuries had been "put to its intended use" since Sphinx had left the Premises and Walgreens had opened the store. (Pl. Mem. 11.)
Image appears to argue that the Intended Use Clause does not apply for the same reasons it contends that the All Works Clause does not apply. (See generally Image Opp'n; Image Reply.) Image does not directly explain why the portion of Sphinx's work causing LeClerc's injuries had not been put to its intended use.[5] (Image Opp'n 14.)
In order to determine the applicability of the Intended Use Clause, the Court must determine the significance of the terms "[t]hat portion" and "intended use," particularly with regard to how they modify the term "[Sphinx's] work." The parties have provided little discussion as to the Intended Use Clause. Neither party offered any definitions for "[t]hat portion" or "intended use." Nor did they offer any extrinsic evidence of the parties' intent as to these terms or section or guidance in the form of established customs, and state or federal law. Nevertheless, the Court finds that the Intended Use Clause would have excluded Image from coverage regardless of how "[t]hat portion" and "intended use" is understood.
The use of the term "[t]hat portion" indicates that Sphinx's work can and should be subdivided in interpreting the Intended Use Clause. By its very definition, "portion" suggests that Sphinx's work "can ... take place in a piecemeal manner." See Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n , 764 F.3d 726, 734 (7th Cir. 2014). The term suggests that as Sphinx performs its duties, the Intended Use Clause excludes from coverage "each part of the work that has been put to its intended use." Id. at 734 (emphasis added). "That portion" thus cannot be interpreted *338 as encompassing the entirety of Sphinx's contract with Image. Taking these limits and requirements into account, the Court conceives of only two reasonable ways to subdivide Sphinx's work under the circumstances: (1) installments of work, in terms of tasks performed and/or discrete periods of time, as required under the overall contract;[6] and (2) the areas of the Premises that have been worked upon.[7]
The phrase "put to its intended use," in the context of janitorial services, should encompass the opening of the Premises to customers, even if defined in a manner most forgiving to potential insureds. See Allegheny Design Mgmt., Inc. v. Travelers Indem. Co. of Am. , 572 F. App'x 98, 101 (3d Cir. 2014) (holding that work of installing glass at a retail store was "only put to its intended use by [the retailer] when the store opened for business" because "the purpose of the glass was clearly to serve as a window through which potential customers could survey items for sale"); Mountain States Tel. & Tel. Co. v. Granite State Ins. Corp. , 134 Ariz. 582, 584, 658 P.2d 235 (Ct. App. 1982) (explaining that insurance policy exclusion may have applied following the opening up of an area to the public had the injury stemmed from that portion of the premises that was mopped and cleaned as required by the janitorial contract); see also J.Z.G. Res., Inc. v. King , 987 F.2d 98, 101 (2d Cir. 1993) (holding road construction work to be put to its intended use because "[t]he roads ... [we]re clearly in use"); Nautilus , 764 F.3d at 734 (holding condominium development work to be put to its intended use after owners of individual units began "moving ... their personal property" into the condominiums); Martco Ltd. P'ship v. Wellons, Inc. , 588 F.3d 864, 881 (5th Cir. 2009) (holding manufacturing work to be put its intended use after the product began to be "employ[ed]"). Indisputably, the ultimate purpose of any maintenance work on the floors of retail stores, including janitorial services, is to allow customers access to items that are for sale. Whether the required services were adequately performed is also irrelevant to resolving the issue of work being put to its intended use. See J.Z.G. , 987 F.2d at 101 (holding roads to be put to their intended use despite substantial defects); Emp'rs. Ins. Co. of Wausau v. Northfield Ins. Co. , 150 F.Supp.3d 196, 201 (E.D.N.Y. 2015) (holding door to be put to intended use despite alleged defects because it was in use by plaintiff in underlying action). Janitorial services are therefore put to their intended use if the premises are opened for business, regardless of whether the work provided was adequate.
*339 Based on the above understanding of the terms in the Intended Use Clause, the portion of Sphinx's work "out of which the injury ... ar[o]se" was put to its intended use prior to LeClerc sustaining her bodily injuries. The relevant portion of Sphinx's work is either all the required services on June 2, 2011, the date LeClerc was injured, and/or the area around aisle five of the Premises, the specific area where the incident occurred. Defined either way, that portion of Sphinx's work was put to its intended use by the opening of the Premises to customers. There is no dispute that the Premises, including aisle five, was open to the public without any reservation after Sphinx had cleaned and/or waxed the floors and left the Premises. LeClerc even testified that a customer had fallen down prior to her own injury near the area where she later fell. (See LeClerc Dep. 65:15-19 (explaining that she was at aisle five prior to her accident because a customer had fallen down).) Having considered the potential definitions for "[t]hat portion" and "intended use," the Court cannot decipher any reasonable interpretation such that the Intended Use Clause would not apply in this case. However, Plaintiff cannot rely on this exclusion because it failed to meet the disclaimer requirements set forth in New York Insurance Law § 3420(d)(2) as discussed below.
d. Common law estoppel
Image argues that Plaintiff is estopped from denying coverage regardless of the applicability of the Additional Insured and Exclusions Provisions. (Def. Mem. 20.) Beginning October 6, 2014, Plaintiff provided coverage to Image with certain reservations. (Id. ) Image contends that Plaintiff's expressly asserted reservations are unrelated to the additional insured policy endorsements and exclusions now relied upon. (Id. ) According to Image, Plaintiff's reservations were based solely on the "insured contract" and "Work Performed on Premises Open for Business" exclusions. (Id. ) In addition, Image argues that the lengthy delay in disavowing coverage counsels against allowing its withdrawal, "especially since [Plaintiff] has been controlling [Image's] defense since 2014." (Id. )
Plaintiff disputes Image's characterization of its reservations. Plaintiff contends that its multiple coverage positions plainly state that it only provided coverage initially because it was unclear "whether LeClerc's alleged bodily injuries took place during Sphinx's ongoing operations, such that coverage comes within the additional insured endorsement of the [Policy]." (Pl. Opp'n 13.) In addition, Plaintiff asserts that insurers may disclaim coverage and withdraw a defense at any time should a claim fall outside the scope of the insurance contract. (Id. ) Plaintiff therefore asserts that insurers cannot have waived or be estopped from disclaiming "coverage where none exists."[8] (Id. at 13-15.) Further, *340 Plaintiff contends that Image cannot show unreasonable delay or prejudice as required for estoppel. (Id. )
Common law estoppel requires prejudice as to the insured in addition to unreasonable delay. See Bluestein & Sander v. Chi. Ins. Co. , 276 F.3d 119, 122 (2d Cir. 2002) (citation omitted) ("Under New York common law, an insurer, who undertakes the defense of an insured, may be estopped from asserting a defense to coverage, no matter how valid, if the insurer unreasonably delays in disclaiming coverage and the insured suffers prejudice as a result of that delay."); see also MCI LLC v. Rutgers Cas. Ins. Co. , No. 06-CV-4412, 2007 WL 2325867, at *7 (S.D.N.Y. Aug. 13, 2007) ("Prior to ... enactment [of Section 3420(d) ], attempts to disclaim could always be defeated by showing waiver or estoppel, the latter necessarily requiring prejudice.... Indeed, these 'common law' defenses are not precluded, even when the statute is invoked") (quoting Allstate Ins. Co. v. Gross , 27 N.Y.2d 263, 269, 317 N.Y.S.2d 309, 265 N.E.2d 736 (1970) ). Although prejudice is often presumed where an insurer provides coverage and undertakes a defense, courts have expressed that such a presumption applies in the absence of a "reserv[ation] [of] the privilege to do so." Albert J. Schiff Assocs., Inc. v. Flack , 51 N.Y.2d 692, 699, 435 N.Y.S.2d 972, 417 N.E.2d 84 (1980) ; Bluestein , 276 F.3d at 122 (holding prejudice to an insured may be presumed "where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so , undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense" (citation omitted and emphasis added) ).
Image's arguments based on common law estoppel are inadequate. Image fails to provide any affirmative evidence of prejudice, and instead seeks to rely on its presumption based on Plaintiff's control over its defense. (See Pl. Reply 9 ("Plaintiff fails to state that it has been controlling Image's defense since 2014 or that it undertook Image's defense on which Image suffered the detriment of losing the right to control its own defense.").) Plaintiff, however, expressly reserved its right to disclaim coverage in its coverage letters. See Gelfman v. Capitol Indem. Corp. , 39 F.Supp.3d 255, 273 (E.D.N.Y. 2014) ("As a general rule, the fact that an insurer undertakes the defense of an insured, even for an extended period of time, does not constitute a legally cognizable source of prejudice unless the representation occurred absent a reservation of rights or was such that the character and strategy of the lawsuit could no longer be altered."); see also *341 Scottsdale Ins. Co. v. United Indus. & Constr. Corp. , No. 12-CV-5732, 2017 WL 52581, at *3 (E.D.N.Y. Jan. 4, 2017) ("In cases where the insurer undertakes the insured's defense without knowledge of its basis for disclaimer or where the insurer asserts its rights to disclaim coverage once realized, prejudice may not be presumed - rather, it must be established. " ); Federated Dep't Stores, Inc. v. Twin City Fire Ins. Co. , 28 A.D.3d 32, 807 N.Y.S.2d 62, 68 (2006) ("Prejudice, however, is not uniformly presumed [where insurer controls insurer's defense in the underlying action].... Prejudice is established only where the insurer's control of the defense is such that the character and strategy of the lawsuit can no longer be altered." (citations omitted) ); Globe Indem. Co. v. Franklin Paving Co. , 77 A.D.2d 581, 430 N.Y.S.2d 109, 111 (1980) ("[W]here an insurer has undertaken the defense of an action on behalf of an insured, with knowledge of the facts constituting a defense to coverage under the policy ... the former may be estopped from asserting that its policy does not cover the underlying claim." (citations omitted and emphasis added) ). Image's arguments based on common law equitable estoppel are thus meritless.
e. New York Insurance Law § 3420(d)(2)
Both parties repeat the arguments they made as to common law estoppel with respect to the applicability of New York Insurance Law § 3420(d)(2).[9] (See Image Letter Sur-reply dated July 27, 2018, ("Image Sur-reply") 1, Docket Entry No. 41; Pl. Letter Sur-reply dated July 27, 2018, ("Pl. Sur-reply") 1, Docket Entry No. 40.)[10]
Under New York Insurance Law § 3420(d)(2), "an insurer must notify an insured as 'soon as is reasonably possible' of its intention to disclaim coverage for bodily injury under a policy." U.S. Underwriters Ins. Co. v. City Club Hotel, LLC , 369 F.3d 102, 106-07 (2d Cir. 2004) ; see *342 also Sierra v. 4401 Sunset Park, LLC , 24 N.Y.3d 514, 517, 2 N.Y.S.3d 8, 25 N.E.3d 921 (2014) (holding notice sent to additional insured's primary insurer alone insufficient to satisfy section 3420(d)(2) ). "[T]imeliness of an insurer's disclaimer is measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage." Phila. Indem. Ins. Co. v. Intrepid Grp., LLC , No. 16-CV-7928, 2018 WL 1517199, at *6 (S.D.N.Y. Mar. 26, 2018) (quoting First Fin. Ins. Co. v. Jetco Contracting Corp. , 1 N.Y.3d 64, 68-69, 769 N.Y.S.2d 459, 801 N.E.2d 835 (2003) ). "[T]his notice provision is 'designed to protect the insured ... against the risk, posed by a delay in learning the insurer's position, of expending ... resources in an ultimately futile attempt to recover damages from an insurer.' " Zurich Am. Ins. Co. v. Liberty Mut. Ins. Co. , 710 F. App'x 3, 7 (2d Cir. 2017) ; see also Phila. Indem. , 2018 WL 1517199, at *6 ("The New York State Legislature enacted section 3420(d)(2) to aid injured parties by encouraging the expeditious resolution of liability claims." (citations and internal quotation marks omitted) ). "Compared to traditional common-law waiver and estoppel defenses, section 3420(d)(2) creates a heightened standard for disclaimer that depends merely on the passage of time rather than on the insurer's manifested intention to release a right as in waiver, or on prejudice to the insured as in estoppel." Nadkos, Inc. v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC , 162 A.D.3d 7, 12, 6 N.Y.S.3d 528 (2018) (quoting KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc. , 23 N.Y.3d 583, 590, 992 N.Y.S.2d 185, 15 N.E.3d 1194 (2014) ). A reservation of rights letter is therefore insufficient to meet the requirements of section 3420(d)(2). See Phila. Indem. , 2018 WL 1517199, at *6 ("A reservation of rights letter is not a satisfactory notice of disclaimer under section 3420(d)(2)." (citation omitted) ); Hartford Ins. Co. v. Nassau Ctny. , 46 N.Y.2d 1028, 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979) ("A reservation of rights letter has no relevance to the question whether the insurer has timely sent a notice of disclaimer of liability or denial of coverage."); Montpelier U.S. Ins. Co. v. 240 Mt. Hope Realty Co. , No. 15-CV-1033, 2015 WL 6395949, at *2 (S.D.N.Y. Oct. 22, 2015) ("[W]here Section 3420(d)(2) applies, the insured need not show prejudice from the delayed disclaimer; instead, the only question is whether the delay was 'unreasonable.' " (citation omitted) ).
"An insurer who delays in giving written notice of disclaimer bears the burden of justifying the delay." City Club Hotel , 369 F.3d at 107 (quoting First Fin. , 1 N.Y.3d at 69, 769 N.Y.S.2d 459, 801 N.E.2d 835 ). "[A]n insurer's explanation is insufficient as a matter of law where the basis for denying coverage was or should have been readily apparent before the onset of the delay." Phila. Indem. , 2018 WL 1517199, at *6 (quoting First Fin. , 1 N.Y.3d at 69, 769 N.Y.S.2d 459, 801 N.E.2d 835 ). "[W]here the grounds for disclaimer are not readily apparent, an insurer must be given reasonable time to adequately investigate a claim in order to determine whether it wishes to disclaim coverage, but the insurer also has an obligation to engage in a reasonably prompt, thorough, and diligent investigation of the claim." Id. (quoting City Club Hotel , 369 F.3d at 107 ). While the reasonableness of a delay is "[n]ormally ... a question of fact which depends on all the facts and circumstances, especially the length of and the reason for the delay," summary judgment may be appropriate in certain "exceptional" cases, in particular where the insurer has offered no explanation. City Club Hotel , 369 F.3d at 107 (citing *343 Hartford Ins. Co. v. Nassau Cnty. , 46 N.Y.2d 1028, 1030, 416 N.Y.S.2d 539, 389 N.E.2d 1061 (1979) ); see Montpelier , 2015 WL 6395949, at *3 (collecting cases). New York courts have consistently found unreasonable unexplained delays as short as one to two months. See Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp. , 213 F.Supp.3d 594, 605 (S.D.N.Y. 2016) ("New York courts have held that unexplained delays of two months or more are unreasonable as a matter of law."); Hartford , 46 N.Y.2d at 1029-30, 416 N.Y.S.2d 539, 389 N.E.2d 1061 ("[W]e conclude that where, as here, no explanation is offered for the delay in disclaiming liability or denying coverage, a delay of two months is unreasonable as a matter of law, and hence the insurer may not disclaim liability or deny coverage in this case."); Guzman v. Nationwide Mut. Fire Ins. Co. , 62 A.D.3d 946, 880 N.Y.S.2d 302 (2009) (fifty-one days); First Fin., 1 N.Y.3d at 66, 769 N.Y.S.2d 459, 801 N.E.2d 835 (forty-eight days); W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co. , 290 A.D.2d 278, 736 N.Y.S.2d 34, 35 (2002) (thirty days); Colonial Penn Ins. Co. v. Pevzner , 266 A.D.2d 391, 698 N.Y.S.2d 310, 310 (1999) (forty-one days).
i. Plaintiff is required to comply with its disclaimer requirements
Plaintiff's argument that there can be no waiver or estoppel where no coverage exists is misplaced.[11] Although a "disclaimer pursuant to section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion," timely notice is "necessary when denial of coverage is based on a policy exclusion without which the claim would be covered."[12] Worcester Ins. Co. v. Bettenhauser , 95 N.Y.2d 185, 188-89, 712 N.Y.S.2d 433, 734 N.E.2d 745 (2000) ; see also id. ("[D]rawing the line between a lack of coverage in the first instance (requiring no disclaimer) and a lack of coverage based on an exclusion (requiring timely disclaimer) has at times proved problematic. Both are situations where there is no coverage."). Plaintiffs are obligated to provide timely disclaimers where they seek to deny coverage "by reason of exclusion" rather than "by reason of lack of inclusion." See NGM Ins. Co. v. Blakely Pumping, Inc. , 593 F.3d 150, 153 (2d Cir. 2010) (quoting Zappone v. Home Ins. Co. , 55 N.Y.2d 131, 137, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982) ).
To invoke the "intended use" policy exclusion , Plaintiff was required to disclaim coverage pursuant to section 3420(d).[13] Although not dispositive on the issue, the Exclusions Provision styles itself as providing "additional exclusions " to "insurance afforded to ... additional insureds." Cf.
*344 Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc. , No. 13-CV-2466, 2014 WL 639420, at *10 (E.D.N.Y. Feb. 18, 2014) ("[T]he New York Court of Appeals has indicated that it is the effect of a provision rather than its denomination that prevails for purposes of determining whether it is an exclusion.") (citing Planet Ins. Co. v. Bright Bay Classic Vehicles, Inc. , 75 N.Y.2d 394, 399, 554 N.Y.S.2d 84, 553 N.E.2d 562 (1990) ). Moreover, the effect of the intended use provision is to deny coverage "by reason of exclusion" because it "uncover[s]" what was "initially covered by [the Additional Insured Provision]" for qualifying additional insureds. See NGM , 593 F.3d at 153 (requiring notice under car insurance "[s]ince the car [at issue] was at one point covered, [meaning] th[at] [the] ... case [was not one] where there 'was never a policy in effect covering the involved automobile' "). The Additional Insured Provision provides coverage for liability arising from the named insured's acts or omissions in the performance of its ongoing operations. See Mount Vernon Fire , 213 F.Supp.3d at 605 (finding denial of coverage for not meeting requirements for additional insured status to be "premised upon a lack of coverage"). The Intended Use Clause "uncovers" this coverage for the named insured's acts or omissions "upon the happening of a subsequent event" - the completion of the portion of the work giving rise to the bodily injuries to its intended use. See NGM , 593 F.3d at 154 (holding that a denial of coverage is by reason of exclusion where the basis is contingent "upon the happening of a subsequent event"); Mount Vernon Fire , 213 F.Supp.3d at 605 (finding insurer had an obligation to timely disclaim coverage as to one defendant because exclusion was "premised upon a policy exclusion" rather than additional insured status).
ii. Plaintiff fails to explain its delay in disclaiming coverage
Plaintiff fails to explain its delay in disclaiming coverage. (See Pl. Opp'n 6-7 (stating conclusorily that Plaintiff "promptly" disclaimed coverage following depositions of LeClerc and Voyles).)[14] In order to invoke this exclusion, Plaintiff only needed information that after Sphinx had performed its work either for June 2, 2011 or aisle five specifically, the Premises, including aisle five, had been opened for business. All of this information was readily available, at the very latest, by the end of January 11, 2016, following the conclusion of LeClerc's deposition.[15]
While explaining the delay in obtaining the necessary facts from the filing of the LeClerc Action in 2014, Plaintiff provides no explanation as to its three and a half month delay in using that information to disavow coverage on April 26, 2016.[16]
*345 Plaintiff's reliance on its stated reservation of rights or lack of prejudice as to Image is misplaced. See Phila. Indem. , 2018 WL 1517199, at *6 ; Hartford Ins. , 46 N.Y.2d at 1029, 416 N.Y.S.2d 539, 389 N.E.2d 1061 ; Montpelier , 2015 WL 6395949, at *2 As a result, Plaintiff's unexplained three and a half month delay in disclaiming coverage is unreasonable as a matter of law.
Consequently, Plaintiff may not disclaim coverage based on the additional insured endorsements or exclusions and must defend Image in the LeClerc Action.
f. Plaintiff must indemnify
Plaintiff must also indemnify Image for any liability arising from the LeClerc Action because it can no longer disclaim coverage because of its failure to timely disclaim pursuant to section 3420(d)(2). See Montpelier , 2015 WL 6395949, at *3 ; Jewish Cmty. Ctr. of Staten Island v. Trumbull Ins. Co. , 957 F.Supp.2d 215, 238-39 (E.D.N.Y. 2013) ; Fulton Boiler Works, Inc. v. Am. Motorists Ins. Co. , 828 F.Supp.2d 481, 497-98 (N.D.N.Y. 2011). Because indemnification is based on section 3420(d)(2), the Court only considered facts regarding Plaintiff's conduct in timely disclaiming coverage. A declaratory judgment as to indemnification is not "premature" in this case because the duty to indemnify does not rely on any facts at issue in the LeClerc Action.[17] See *346 Pac. Emp'rs. Ins. Co. v. Saint Francis Care Inc. , 729 F. App'x 129, 130 (2d Cir. 2018) (explaining that a declaratory judgment as to indemnification would be "premature" where the duty to indemnify is dependent on "facts established at trial and the theory under which judgment is actually entered in a case"). Plaintiff must therefore indemnify Image for any judgment in the LeClerc Action.
g. Reimbursement
Image seeks reimbursement of its costs in defending this action. (Pl. Mem. 22.) Image contends that it has been placed in a "defensive posture" by having to defend against Plaintiff's attempt to obtain declaratory relief. (Id. ) As a "prevailing policyholder" against its insurer seeking to avoid coverage, Image contends that it is entitled to reimbursement. (Id. )
Plaintiff contends that Image is not entitled to reimbursement because Scottsdale Insurance Company ("Scottsdale"), Image's insurer, is the real defendant in this action. (Pl. Opp'n 15.) Plaintiff asserts that Scottsdale is the entity that disputes its coverage position, has sent objections to the coverage position letters, and with whom it has corresponded regarding the duties to defend and indemnify in the LeClerc Action. (Id. ) Plaintiff also argues that Scottsdale, through Image, has asserted a counterclaim seeking a declaration as to the obligations under the Policy. (Id. ) Accordingly, Plaintiff argues that Image is not in a "defensive posture" because the dispute is "in reality between two insurers." (Id. at 16.) Plaintiff thus argues that Image must provide evidence that it, rather than Scottsdale, has "actually incurred costs in defending this action" in the event the Court requires reimbursement.
*347 (Id. ) Plaintiff offers no support for its arguments.
Under New York law, "an insured 'cast in a defensive posture by the legal steps an insurer takes in an effort to free itself from its policy obligations' may recover attorneys' fees and expenses incurred in defending against the insurer's 'affirmative action ... to settle its rights' where the insured prevails in that action." Burlington , 29 N.Y.3d at 330 n.3, 57 N.Y.S.3d 85, 79 N.E.3d 477 (quoting Mighty Midgets, Inc. v. Centennial Ins. Co. , 47 N.Y.2d 12, 21, 416 N.Y.S.2d 559, 389 N.E.2d 1080 (1979) (" Mighty Midgets " ) ). Although this " Mighty Midgets " rule "appears broadly applicable to insurers attempting to escape any policy obligation, ... the insured is entitled to attorneys' fees only if the insured prevails in a dispute over the insurer's attempt 'to free itself' from its 'duty to defend.' "[18] N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc. , 599 F.3d 102, 128 (2d Cir. 2010) (quoting Liberty Surplus Ins. Corp. v. Segal Co. , 420 F.3d 65, 67-68 (2d Cir. 2005) ); see also Fiduciary Ins. Co. of Am. v. Med. Diagnostic Servs., P.C. , 150 A.D.3d 498, 56 N.Y.S.3d 20, 21 (2017) ("[A]n insured party may recover attorneys' fees where it successfully defends against its insurer's action seeking a declaratory judgment that it has no duty to defend or indemnify its insured." (citation omitted) ). "The reasoning behind [the rule] is that an insurer's duty to defend an insured extends to the defense of any action arising out of the occurrence, including a defense against an insurer's declaratory judgment action." U.S. Underwriters Ins. Co. v. City Club Hotel, LLC , 3 N.Y.3d 592, 597-98, 789 N.Y.S.2d 470, 822 N.E.2d 777 (2004). Based on this rationale, counterclaims that are "mirror image[s]" of the insurer's declaratory claims are not considered to cast the insurer in a defensive posture. Am. Home Assur. Co. v. Port Auth. of N.Y. & N.J. , 123 A.D.3d 633, 1 N.Y.S.3d 29, 30 (2014) ("[T]he motion court correctly determined that defendant is entitled to the legal fees incurred in connection with its prior successful motion for summary judgment on its counterclaim for declaratory relief."); Danaher Corp. v. Travelers Indem. Co. , No. 10-CV-0121, 2015 WL 409525, at *6 (S.D.N.Y. Jan. 16, 2015) (explaining that a "line of authority" suggests that fees are reimbursable for declaratory judgment counterclaims by insureds that only mirror that initiated by (insurers) ), amended , No. 10-CV-0121, 2015 WL 417820 (S.D.N.Y. Jan. 29, 2015), report and recommendation adopted , No. 10-CV-121, 2015 WL 1647435 (S.D.N.Y. Apr. 14, 2015) ; but see Allstate Ins. Co. v. Aetna Cas. & Sur. Co. , 123 Misc.2d 932, 475 N.Y.S.2d 219, 222 (Sup. Ct. 1984) ("The insured may recover for defending but may not recover for prosecuting cross-claims and counterclaims." (citing Johnson v. Gen. Mut. Ins. Co. , 24 N.Y.2d 42, 50, 298 N.Y.S.2d 937, 246 N.E.2d 713 (1969) ) ).
Image is entitled to attorneys' fees as it prevailed after being placed in a defensive posture by Plaintiff. By initiating this declaratory action, Plaintiff placed Image in the position of having to defend its rights to a defense and indemnification under the Policy. See City Club Hotel, LLC , 369 F.3d at 110 (explaining that a prevailing insured is entitled to attorneys' fees in a declaratory action that it did not initiate); Netherlands Ins. Co. v. Selective Ins. Co. of Am. , No. 14-CV-7132, 2016 WL 866348, at *8 (S.D.N.Y. Mar. 3, 2016) (same); see also *348 Scottsdale Ins. Co. v. United Indus. & Const. Corp. , 137 F.Supp.3d 167, 182 (E.D.N.Y. 2015) ("[The insurer] sought a declaratory judgment that it had no duty to defend [the insured] against the [u]nderlying [a]ctions when it did in fact have a duty to do so, which brings this action within the scope of the exception."). Although Image also sought a declaration as to its rights under the Policy, "[s]ince the rights of the parties in a declaratory action must be affirmatively declared one way or the other, the assertion of [the] counterclaim such as was interposed here is redundant and mere surplusage." W. 56th St. Assocs. v. Greater N.Y. Mut. Ins. Co. , 250 A.D.2d 109, 681 N.Y.S.2d 523, 527 (1998). Through its counterclaim, Image merely sought to ensure that its rights to a defense and indemnification were acknowledged and preserved. Image is therefore entitled to fees incurred in this action.
Plaintiff's argument that Image is not entitled to any reimbursement because Scottsdale is the real defendant is also unavailing. As an initial matter, Plaintiff initiated this action against Image, not Scottsdale. (See generally Compl.); cf. Zurich Am. Ins. Co. v. Wausau Bus. Ins. Co. , 206 F.Supp.3d 818, 820 (S.D.N.Y. 2016) (involving dispute between two insurers as to which entity was obligated to defend and indemnify policyholder in the underlying action). Plaintiff also provides no support for its argument that an insured is not placed in a defensive posture merely because another insurance company is willing to cover any costs incurred from defending against an insurer's attempts to disclaim the duties to defend or indemnify.[19] Courts have also required reimbursement to prevailing additional insureds, who by definition are likely to have their own insurers separate from those of the named insureds. See Turner Const. Co. v. Am. Mfrs. Mut. Ins. Co. , 485 F.Supp.2d 480, 490 (S.D.N.Y. 2007), aff'd sub nom. Turner Const. Co. v. Kemper Ins. Co. , 341 F. App'x 684 (2d Cir. 2009) ; Gen. Ins. Co. of Am. v. City of New York , No. 04-CV-8946, 2005 WL 3535113, at *2 (S.D.N.Y. Dec. 23, 2005) ; see also Allstate Ins. Co. , 475 N.Y.S.2d at 222 ("The absence of a direct claim is not determinative, but the issue is whether the insurer, not the insured, has taken affirmative steps to free itself of its obligation to defend thereby casting the insured in a defensive posture."). Moreover, the purpose of the Mighty Midgets rule is to reimburse a prevailing insured the costs incurred from having to defend against an insurer's misplaced disclaimer of its duties to defend or indemnify. Whether Image would have been reimbursed the costs of defending this action regardless of the outcome is a separate inquiry.[20] The only relevant inquiry in this action is whether Image was placed in a defensive posture by Plaintiff's affirmative actions. See Burlington Ins. Co. , 29 N.Y.3d at 330 n.3, 57 N.Y.S.3d 85, 79 N.E.3d 477. Having answered that question in the affirmative, the Court orders Plaintiff to reimburse Image for the costs incurred from *349 this action. To the extent there is a dispute over the reasonableness of the fees, the parties are directed to submit in writing their respective positions after a good-faith attempt to resolve any issues.
III. Conclusion
For the foregoing reasons, the Court grants Image's cross-motion and denies U.S. Underwriters' cross-motion for summary judgment. Accordingly, the Court declares that U.S. Underwriters has a duty to defend and indemnify Image in the LeClerc Action. U.S. Underwriters must also reimburse Image for costs incurred in this action.
SO ORDERED.

The Court cites to the Complaint and Image's Answer only for the purpose of providing the available background information. See Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP , 322 F.3d 147, 167 (2d Cir. 2003) (holding allegations in the amended complaint to be "judicial admission[s]").

The New York Court of Appeals also reached its decision after the underlying action had settled. See Burlington Ins. Co. v. NYC Transit Auth. , 29 N.Y.3d 313, 319, 57 N.Y.S.3d 85, 79 N.E.3d 477 (2017) ("[The insurance company] thereafter settled the lawsuit for $950,000.").

New York federal courts sitting in diversity apply New York choice-of-law. See AEI Life LLC v. Lincoln Benefit Life Co. , 892 F.3d 126, 132 (2d Cir. 2018). In the context of liability insurance contracts, New York choice-of-law applies the substantive law of "the jurisdiction with the most 'significant relationship to the transaction and the parties' [which] generally [is] the jurisdiction 'which the parties understood was to be the principal location of the insured risk.' " In re Liquidation of Midland Ins. Co. , 16 N.Y.3d 536, 544, 923 N.Y.S.2d 396, 947 N.E.2d 1174 (2011) (citation omitted). In assessing the proper jurisdiction, New York courts consider the following five factors: (1) the place of contracting, (2) the place of negotiation, (3) the place of performance, (4) the location of the subject matter, and (5) the contracting parties' domiciles. Certain Underwriters at Lloyd's, London v. Foster Wheeler Corp. , 36 A.D.3d 17, 822 N.Y.S.2d 30, 36 (2006), aff'd , 9 N.Y.3d 928, 844 N.Y.S.2d 773, 876 N.E.2d 500 (2007) ; see also Standard Gen. L.P. v. Travelers Indem. Co. of Conn. , 261 F.Supp.3d 502, 506 (S.D.N.Y. 2017) ("If the policy covers risks in multiple states, however, then the state of the insured's domicile (i.e., the insured's principal place of business) is 'a proxy for the principal location of the insured risk' and is the 'controlling factor' in determining the applicable law." (citation omitted) ).
The parties agree that New York substantive law should apply even in the absence of a choice-of-law provision. (See generally Pl. Mem.; Image Mem.) Sphinx, the named insured, is a New York corporation and the Policy itself acknowledges on multiple pages that the coverage will be in New York. In addition, the work at issue in this action occurred in New York. Although Plaintiff's principle place of business is Pennsylvania, and it is unclear where the contract was negotiated and ultimately executed, the Court applies New York law given these factors and the parties' agreement. See also U.S. Underwriters Ins. Co. v. Beckford , No. 93-CV-4272, 1998 WL 23754, at *2 (E.D.N.Y. Jan. 20, 1998) ("Under New York law, questions regarding an insurer's duties in respect to events that occurred in New York are governed by New York law." (citation omitted) ).

The Additional Insured Provision provides:
Who is An Insured is amended to include as an additional insured the person(s) or organizations(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damages" or "personal and advertising injury" caused, in whole or in part, by:
1. Your acts or omissions; or
2. The acts or omissions of those acting on your behalf;
in the performance of your ongoing operations for the additional insure[s] at the location[s] designated above.
(Policy, annexed Image Mot. as Ex. K to, Docket Entry No. 25-12.)

Image cited in part for support to Perez v. New York City Housing Authority , 302 A.D.2d 222, 754 N.Y.S.2d 635 (2003), a case that is not applicable because the First Department did not consider the issue. (See Def. Opp'n 14); Perez , 754 N.Y.S.2d at 635 ("[T]he ... 'intended use' [argument] is improperly raised for the first time on appeal, and we decline to consider it.").

Sphinx's contract with Image is not a type where subdivision is inherently impossible due to uninterrupted ongoing requirements or duties. See Liberty Surplus Ins. Corp. v. Norfolk S. Ry. Co. , 684 F. App'x 788, 792-93 (11th Cir. 2017) (holding ongoing duties of observation and maintenance precluded work from being considered put to its intended use).

The Court does not find it reasonable to divide Sphinx's work in terms of tasks alone under the entirety of the contract with Image. Taken to its logical conclusion, a division based on tasks alone (i.e., cleaning as opposed to waxing) would not allow consideration of a "portion" of Sphinx's work because the contract requires performance of all tasks so long as it is in effect. Accordingly, under that interpretation, any task could not be put to its intended use until the contract expires. Interpreted in this manner, the Intended Use Clause would render the All Works clause meaningless. See Nautilus Ins. Co. v. Bd. of Dirs. of Regal Lofts Condo. Ass'n , 764 F.3d 726, 735 (7th Cir. 2014) (declining to interpret exclusion based on intended use so as to be synonymous with exclusion based on completion of all work because to do so would "offend[ ] a well-settled principle of contract construction [that] a contract must not be interpreted in a manner that nullifies provisions of that contract" (citations omitted) ).

Image expressly addressed common law waiver for the first time in its reply to Plaintiff's opposition submission which addressed both waiver and estoppel. (See Image Reply 9; see also Image Mem. 20 (citing case in a manner that suggested it was not relying on waiver at all) ); see also Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp. , 302 F.3d 83, 95 (2d Cir. 2002) ("Waiver and estoppel are distinct in New York insurance law."). Thus, the Court need not address this argument. See Byrd v. NYS Fingerlakes Developmental Disabilities Servs. O.P.W.D.D. , No. 14-CV-06470, 2018 WL 3305423, at *2 (W.D.N.Y. July 5, 2018) ("[A] district court is free to disregard argument raised for the first time in reply papers, especially on a motion for summary judgment." (quoting Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co. , 611 F.Supp.2d 373, 376 (S.D.N.Y. 2009), aff'd , 374 F. App'x 71 (2d Cir. 2010) ) ).
The Court also finds Image's arguments based on waiver inadequate. Image contends that Plaintiff did not reserve its rights as to the Additional Insured and Exclusions Provisions. (See Reply 9.) Plaintiff, however, expressly explained in its October 6, 2014 letter to Image that it was defending the action "while disclaiming coverage" because there were insufficient facts to determine whether LeClerc's accident and injuries fell into the Additional Insured and Exclusions Provisions. (See October 6, 2014 Letter 1-3.) In addition, Plaintiff's March 10, 2015 letter to Image expressly states that there was insufficient information to determine whether it owed a defense and a copy of the October 6, 2014 letter was attached to explain why coverage was being provided while being disclaimed. (See March 10, 2015 Letter.) These express reservations are sufficient to defeat Image's waiver claim. See Long Island Lighting Co. v. Am. Re-Ins. Co. , 123 A.D.3d 402, 998 N.Y.S.2d 169, 171 (2014) ("Waiver is the voluntary relinquishment of a known right and must be predicated upon knowledge of the facts upon which the existence of the right depends." (citation omitted) ).

Plaintiff only challenges the applicability of New York Insurance Law § 3420(d)(2) on the basis that Image does not satisfy the Additional Insured Provision. (See Plaintiff Letter Surreply dated July 27, 2018, ("Pl. Sur-reply"), Docket Entry No. 40.) Plaintiff thus appears to concede that New York Insurance Law § 3420(d)(2) otherwise applies to the circumstances of this case.
"By its plain terms, section 3420 (d)(2) applies ... [to] insurance cases involving death and bodily injury claims arising out of a New York accident" under a liability policy issued or delivered in the state of New York. KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc. , 23 N.Y.3d 583, 590, 992 N.Y.S.2d 185, 15 N.E.3d 1194 (2014) (citation omitted). An insurance policy is issued or delivered in New York if it "cover[s] insureds and risks located in the [S]tate." Carlson v. Am. Int'l Grp., Inc. , 30 N.Y.3d 288, 305, 67 N.Y.S.3d 100, 89 N.E.3d 490 (2017). A named insured is "clearly" located in New York if "it has a substantial business presence and creates risks" in the State. Id. at 306, 67 N.Y.S.3d 100, 89 N.E.3d 490 ; see also Admiral Ins. Co. v. Joy Contractors, Inc. , 81 A.D.3d 521, 917 N.Y.S.2d 168, 170 (2011) (considering location of named insured rather than that of potential additional insured).
Section 3420(d)(2) appears to clearly apply in this action. LeClerc suffered bodily injuries in New York. The insurance policy at issue also covers insureds and risks in New York. Not only is Sphinx based in New York but also has a "substantial presence" in the State as demonstrated by its work on the Premises and the specific references to New York law in the Policy.

In its moving papers, Image did not clearly differentiate its basis for asserting "estoppel." (See Image Mem. 20.) Neither party expressly addressed the applicability of New York Insurance Law § 3420(d)(2). Both parties, however, conflated case law, requirements, and theories for common law waiver, estoppel, and New York Insurance Law § 3420(d)(2) in their briefing. Accordingly, by Order dated July 27, 2018, the Court provided the parties an opportunity to clarify their position as to New York Insurance Law § 3420(d)(2).

Plaintiff also appeared to concede it is sur-reply that the Exclusions Provision was not a basis for finding New York Insurance Law § 3420(d)(2) inapplicable. (See Pl. Sur-reply (relying solely on Additional Insured Provision to disclaim coverage).)

Unlike New York Insurance Law § 3420(d)(2), common law estoppel may prevent insurers from disclaiming coverage where none exists. See Ill. Union Ins. Co. v. Midwood Lumber & Millwork, Inc. , No. 13-CV-2466, 2014 WL 639420, at *12 (E.D.N.Y. Feb. 18, 2014) ("Unlike [section] 3420(d)(2), ... equitable estoppel ... may operate to create obligations, which are independent of the insurer's coverage obligations under the policy, based on the conduct of the insurer on which an insured relies. This is a widely acknowledged exception to the general rule that estoppel cannot be used to create coverage where it would not otherwise exist." (citation omitted) ).

As discussed earlier, Plaintiff cannot deny coverage on the basis that Image is not an additional insured or based on the All Work Clause. Plaintiff's only viable argument to disclaim coverage is based on the Intended Use Clause.

Plaintiff's time to disclaim began to run as of the LeClerc deposition rather than the Blake Voyles deposition. As discussed supra , (pp. 339-40), all the information necessary to disclaim coverage based on the Intended Use Clause was provided in the LeClerc deposition.

Although insurers have a duty to " 'expedite' the disclaimer process," see City of New York v. Greenwich Ins. Co. , 95 A.D.3d 732, 945 N.Y.S.2d 83, 84-85 (2012), "timeliness" or "promptness" of the disclaimer is still "measured from the point in time when the insurer first learns of the grounds for disclaimer of liability or denial of coverage," First Fin. Ins. Co. v. Jetco Contracting Corp. , 1 N.Y.3d 64, 68-69, 769 N.Y.S.2d 459, 801 N.E.2d 835 (2003). Accordingly, the investigation at issue would be that undertaken after, not before, the insurer learned of the grounds for disclaimer. See Greenwich , 945 N.Y.S.2d at 85.

Plaintiff implicitly concedes that the earlier coverage letters prior to that sent on April 26, 2016, were insufficient to disavow coverage pursuant to New York Insurance Law § 3420(d)(2). See Cent. Mut. Ins. Co. v. Willig , 29 F.Supp.3d 112, 117 (N.D.N.Y. 2014) (explaining that whether a letter to an insured is a disclaimer of coverage or a reservation of rights requires sufficiently definite language in order for the communication to constitute a disclaimer and notice of a disclaimer should be in unequivocal and unambiguous language); Strauss Painting, Inc. v. Mt. Hawley Ins. Co. , 24 N.Y.3d 578, 601, 2 N.Y.S.3d 390, 26 N.E.3d 218 (2014) ("In sum, the two letters constituted ineffective notice because they did not disclaim coverage; instead, they reserved the right to disclaim coverage in the future."). In addition, although the letters purported to provide a defense despite "disclaiming coverage," the communications were in actuality reservations of rights - as Plaintiff acknowledges in its briefing. (See Pl. Mem. 5 ("By letter dated October 6, 2014, [Plaintiff] agreed to provide a defense to [Image] pursuant to a reservation of rights."); Pl. Opp'n 6 (same); id. at 14 ("Indeed, the very purpose of a reservation of rights letter....").) Furthermore, as to the additional insured language, the letters at most explained that Plaintiff did not have sufficient information to determine whether coverage existed or not. (October 6, 2014 Letter 4.) A disclaimer cannot be said to be unequivocal or unambiguous when the insurer explains that it does not know whether it has grounds to disclaim. See Hartford Underwriting Ins. Co. v. Greenman-Pederson, Inc. , 111 A.D.3d 562, 975 N.Y.S.2d 736, 737 (2013) (explaining letters "failed the essential purpose of a disclaimer: to timely and clearly inform the insured of where the insurer stands on the issue of coverage for the action, and why, so that the insured can promptly consider appropriate alternatives" (citation omitted) ); see also Atl. Cas. Ins. Co. v. Coffey , 548 F. App'x 661, 664 (2d Cir. 2013) ("New York courts have held that the disclaimer remains valid as long as it 'identified the applicable policy exclusion and set forth the factual basis for the insurer's position that the claim fell within a policy exclusion with sufficient specificity to satisfy the statutory mandate and purpose.' " (emphasis added and citation omitted) ).

Several district courts in the Second Circuit have found unripe for adjudication claims for indemnification where the underlying action is yet to be resolved. See, e.g. , U.S. Underwriters Ins. Co. v. Orion Plumbing & Heating Corp. , No. 16-CV-04641, 321 F.Supp.3d 313, 318, 2018 WL 2078115, at *4 (E.D.N.Y. Mar. 1, 2018) ("Generally, claims involving indemnification obligations are not justiciable until liability has been imposed upon the party to be indemnified." (citation omitted) ); Am. Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc. , No. 16-CV-1541, 2017 WL 4118390, at *6 (E.D.N.Y. Aug. 30, 2017), report and recommendation adopted , No. 16-CV-1541, 2017 WL 4119266 (E.D.N.Y. Sept. 15, 2017) ; FSP, Inc. v. Societe Generale , No. 02-CV-4786, 2003 WL 124515, at *5 (S.D.N.Y. Jan. 14, 2003), aff'd and remanded , 350 F.3d 27 (2d Cir. 2003), and adhered to on reconsideration , No. 02-CV-4786, 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005). The Second Circuit, however, has explained that "the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." Associated Indem. Corp. v. Fairchild Indus., Inc. , 961 F.2d 32, 35 (2d Cir. 1992). "Rather, courts should focus on 'the practical likelihood that the contingencies will occur...." Id. (emphasis added). The Second Circuit has also indicated that the inquiry asks whether there is "no practical likelihood" of liability. In re Prudential Lines Inc. , 158 F.3d 65, 70 (2d Cir. 1998) (citation omitted and emphasis added).
In applying the practical likelihood test, the Court focuses on whether there is pending litigation or the likelihood of future litigation that may require Plaintiff to indemnify Image. See Nike, Inc. v. Already, LLC , 663 F.3d 89, 96 (2d Cir. 2011) ("The Court also suggested that the threat of future litigation remains relevant in determining whether an actual controversy exists."), aff'd , 568 U.S. 85, 133 S.Ct. 721, 184 L.Ed.2d 553 (2013) ; J.J. Smith & Co., Ltd. v. Carpenter's Mach. Co. , No. 93-CV-4745, 1994 WL 108883, at *2 (E.D. Pa. Mar. 30, 1994) (finding case ripe where plaintiff had "already been joined as an additional defendant in [the underlying] state court action and there is some likelihood that [plaintiff] will be found liable in that action."); Nat'l R.R. Passenger Corp. v. Consol. Rail Corp. , 670 F.Supp. 424, 428 (D.D.C. 1987) ("The pending lawsuits naming [the indemnitee] as a defendant are not hypothetical. In each of these cases, there is some likelihood that [the indemnitee] will be found grossly negligent or that punitive damages will be awarded. Accordingly, there is a 'real and substantial' possibility that [the plaintiff] will be called upon to indemnify [the indemnitee] for such claims."); cf. Ingersoll-Rand Co. v. Textron Inc. , No. 96-CV-2582, 1996 WL 680266, at *3 (S.D.N.Y. Nov. 25, 1996) ("[P]laintiff does not cite any case holding that an actual controversy exists when the plaintiff seeks a declaratory judgment of indemnification rights or obligations relating to a claim that has not yet been asserted by a third party."). The Court does not consider the merits of LeClerc's claims against Image in determining the ripeness of the indemnification claim in this action.
The Court finds the indemnification claim ripe for adjudication as there is a "practical likelihood" that Image will be held liable in the LeClerc Action. LeClerc has already filed an action against Image. In addition, the indemnification claim does not rely on any facts to be determined in the underlying action. As a result, there are no ripeness concerns in adjudicating the indemnification claim.

Image prevailed based on the Court's determination that it is owed a defense and indemnification.

Plaintiff also provides no evidentiary support that this is the case.

The Court notes that Image is not entitled to a windfall. To the extent Image is seeking to collect reimbursement in excess of its costs incurred by some combination of fees collected from Plaintiff and Scottsdale, the Court finds that such an attempt would be contrary to the purpose of Mighty Midgets. See U.S. Underwriters Ins. Co. v. City Club Hotel, LLC , 369 F.3d 102, 110 (2d Cir. 2004) ("[A]n insured who prevails in a declaratory action brought by an insurance company seeking to deny a duty to defend and indemnify is allowed to recover fees expended in defending against that action." (emphasis added) ). Accordingly, Image may not allocate itself reimbursement in excess of its actual costs incurred in this action (including after reimbursing Scottsdale, if required, of any costs fronted by that insurer).